[No. S111323. Dec. 18, 2003.]

SAINT AGNES MEDICAL CENTER, Plaintiff and Respondent, v.
PACIFICARE OF CALIFORNIA et al., Defendants and Appellants.

**COUNSEL**

K & R Law Group, Konowiecki & Rank, Peter Roan, Karen S. Fishman, Cameron H. Faber, Samuel J. Woo; Greines, Martin, Stein & Richland, Timothy T. Coates and Peter O. Israel for Defendants and Appellants.

Epstein Becker & Green, William A. Helvestine, Michael T. Horan and Elizabeth Arenson for California Association of Health Plans as Amicus Curiae on behalf of Defendants and Appellants.

Manatt, Phelps & Phillips, Craig J. De Recat, John F. Libby, Seth A. Gold, Jeffrey J. Maurer, Joanna S. McCallum, Terri D. Keville and Barry S. Landsberg for Plaintiff and Respondent.

Haight, Brown & Bonesteel, Roy G. Weatherup, J. Alan Warfield; Marschak, Shulman, Hodges & Bastian, Ronald S. Hodges, J. Ronald Ignatuk and Michael S. Kelly for Alfonso G. De Grezia and Malynda A. De Grezia as Amici Curiae on behalf of Plaintiff and Respondent.

## OPINION

**BAXTER, J.**—This matter comes to us after the Court of Appeal reversed an order of the trial court that denied the petition of defendant PacifiCare of California (PacifiCare) to compel arbitration. The central issue is whether PacifiCare waived its contractual right to arbitration pursuant to a clause contained in a health services contract with plaintiff Saint Agnes Medical Center (Saint Agnes). Relying on *Bertero v. Superior Court* (1963) 216 Cal.App.2d 213 [30 Cal.Rptr. 719] (*Bertero*), the trial court found that a waiver occurred when PacifiCare filed a separate lawsuit that purported to repudiate the health services contract. The Court of Appeal disagreed, finding *Bertero* unpersuasive in light of subsequent case law.

We agree that *Bertero*'s analysis is outdated and should be disapproved to the extent it holds that a party's repudiation of a contract categorically precludes it from invoking an arbitration clause therein. We also find that the only reasonable inference to be drawn from the undisputed facts here is that PacifiCare did not waive its contractual right to arbitration and that therefore its petition to compel arbitration should have been granted. We affirm the judgment of the Court of Appeal.

### FACTUAL AND PROCEDURAL BACKGROUND

In March 2001, PacifiCare filed a lawsuit in Los Angeles County Superior Court against Saint Agnes and others to resolve disputes about the parties' contractual rights and obligations under a health services agreement entered in 1994 (the 1994 HSA) and a second health services agreement entered in June 2000 (the June 2000 HSA).[1] PacifiCare's complaint alleges that the June 2000 HSA is void *ab initio* due to a condition subsequent. Among other things, the complaint seeks a judgment declaring the June 2000 HSA void *ab initio* and declaring its rescission, and enforcement of the parties' rights under the 1994 HSA as if the June 2000 HSA never existed.

---

[1] The parties also refer to a settlement agreement, an amendment to the 1994 HSA, and other instruments that may affect their contractual rights and obligations.

In April 2001, Saint Agnes responded by filing the instant action in Fresno County against PacifiCare and others, seeking damages and other relief for PacifiCare's wrongful conduct in allegedly breaching the June 2000 HSA.

In June 2001, over PacifiCare's objections, Saint Agnes prevailed on its motion to transfer the venue of PacifiCare's Los Angeles lawsuit to Fresno County.[2] Meanwhile, PacifiCare unsuccessfully moved to transfer the venue of Saint Agnes's Fresno action to Orange County.

As relevant here, the June 2000 HSA contains a clause providing that "[a]ny controversy, dispute or claim arising out of the interpretation, performance or breach of this Agreement . . . shall be resolved by binding arbitration at the request of either party." The 1994 HSA contains no such clause.

On July 25, 2001, PacifiCare sent a letter to Saint Agnes requesting that Saint Agnes voluntarily submit seven of the 11 causes of action in its Fresno complaint to arbitration on the ground that they arose out of the interpretation, performance or breach of the June 2000 HSA and therefore fell within the scope of that contract's arbitration clause. PacifiCare offered, on the same ground, to arbitrate six of the 14 causes of action in its Los Angeles lawsuit. Saint Agnes responded it could not agree to arbitration at that time.

On July 31, 2001, some four months after it initiated the Los Angeles lawsuit, PacifiCare filed a petition to compel arbitration of portions of the Fresno action and to stay proceedings. PacifiCare grounded its petition in the California Arbitration Act (Code Civ. Proc., § 1280 et seq.; all further statutory references are to this code unless otherwise indicated), the Federal Arbitration Act (9 U.S.C. § 1 et seq.) (the FAA), and the arbitration clause in the June 2000 HSA. Saint Agnes opposed arbitration, contending that PacifiCare had waived its right to invoke arbitration by expressly repudiating the June 2000 HSA and seeking its judicial rescission on the ground it was void *ab initio*. Saint Agnes also claimed that PacifiCare's delay in seeking arbitration caused it to incur substantial legal fees and costs with respect to both the Fresno and Los Angeles lawsuits.

The trial court denied the petition to compel arbitration, finding that PacifiCare's Los Angeles complaint "show[ed] a clear attempt . . . to repudiate the June 2000 HSA" and that its filing of suit "was inconsistent with any intent to invoke arbitration." Because PacifiCare initiated the Los Angeles action before seeking to compel arbitration, the trial court concluded that Saint Agnes could seek relief in the courts, and that once it did so, PacifiCare "may not retract its repudiation of the contract and insist on arbitration."

---

[2] For ease of reference, we will continue to refer to this separate action as the Los Angeles action or the Los Angeles lawsuit.

The Court of Appeal reversed the trial court's judgment and remanded with directions to grant PacifiCare's petition. Concluding that the record "does not establish . . . as a matter of law [that] PacifiCare waived its right to compel arbitration," the appellate court held the trial court abused its discretion when it failed to stay proceedings and order arbitration. We granted Saint Agnes's petition for review.

## DISCUSSION

The Court of Appeal determined the record sufficiently establishes that the June 2000 HSA involves interstate commerce and therefore falls within the provisions of the FAA. (See 9 U.S.C. §§ 1, 2.) Saint Agnes does not dispute that determination, and PacifiCare expressly agrees with it. Although the FAA generally preempts any contrary state law regarding the enforceability of arbitration agreements (*Rosenthal v. Great Western Fin. Securities Corp.* (1996) 14 Cal.4th 394, 405 [58 Cal.Rptr.2d 875, 926 P.2d 1061]), the federal and state rules applicable in this case are very similar.

As relevant here, the FAA provides: "A written provision in . . . a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." (9 U.S.C. § 2.) A district court, upon being satisfied that the issue in controversy is arbitrable, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration." (9 U.S.C. § 3.)

In California, section 1281 similarly provides: "A written agreement to submit to arbitration . . . a controversy thereafter arising is valid, enforceable and irrevocable, save upon such grounds as exist for the revocation of any contract." Section 1281.2 provides in relevant part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner; or [¶] (b) Grounds exist for the revocation of the agreement. . . ."

For purposes of this case, there is no dispute that authorized agents of Saint Agnes and PacifiCare signed the June 2000 HSA on their behalf, and no

dispute that those entities, by signing that contract, agreed to its written terms, including the arbitration clause.[3] The principal question is whether or not PacifiCare waived its contractual right to arbitration.[4] We start by setting forth the rules governing waiver of arbitration agreements and the appropriate standard of review.

■ As mentioned, the FAA permits a party to obtain a stay of judicial proceedings pending arbitration unless such party is "in default" of that right. (9 U.S.C. § 3.) " 'Although this principle of "default" is akin to waiver, the circumstances giving rise to a statutory default are limited and, in light of the federal policy favoring arbitration, are not to be lightly inferred.' " (*Microstrategy, Inc. v. Lauricia* (4th Cir. 2001) 268 F.3d 244, 249.) Accordingly, a party who resists arbitration on the ground of waiver bears a heavy burden (*id.* at p. 251; *Walker v. J.C. Bradford & Co.* (5th Cir. 1991) 938 F.2d 575, 577), and any doubts regarding a waiver allegation should be resolved in favor of arbitration (see *Moses H. Cone Hospital v. Mercury Constr. Corp.* (1983) 460 U.S. 1, 24–25 [74 L.Ed.2d 765, 103 S.Ct. 927]).

■ Our state waiver rules are in accord. State law, like the FAA, reflects a strong policy favoring arbitration agreements and requires close judicial scrutiny of waiver claims. (*Christensen v. Dewor Developments* (1983) 33 Cal.3d 778, 782 [191 Cal.Rptr. 8, 661 P.2d 1088].) Although a court may deny a petition to compel arbitration on the ground of waiver (§ 1281.2, subd. (a)), waivers are not to be lightly inferred and the party seeking to establish a waiver bears a heavy burden of proof. (*Christensen v. Dewor Developments, supra,* 33 Cal.3d at p. 782; see also *Doers v. Golden Gate Bridge etc. Dist.* (1979) 23 Cal.3d 180, 189 [151 Cal.Rptr. 837, 588 P.2d 1261] (*Doers*).)

■ Both state and federal law emphasize that no single test delineates the nature of the conduct that will constitute a waiver of arbitration. (E.g.,

---

[3] We note that the arbitration clause in the June 2000 HSA states it applies to disputes between Saint Agnes and Priority Health Services (another party to that contract), and that PacifiCare alleges in the Los Angeles action that the June 2000 HSA was never effectively assigned to PacifiCare. We express no opinion as to whether these circumstances might establish that PacifiCare failed to show it is a party to the agreement to arbitrate. Although Saint Agnes raised this point in a footnote in its reply brief and again at oral argument, it had not petitioned for review of the issue in challenging the Court of Appeal's judgment in favor of PacifiCare. We reject the belated attempt to expand the scope of review at this juncture.

[4] As our decisions explain, the term "waiver" has a number of meanings in statute and case law. (*Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 982–983 [64 Cal.Rptr.2d 843, 938 P.2d 903] (*Engalla*).) While "waiver" generally denotes the voluntary relinquishment of a known right, it can also refer to the loss of a right as a result of a party's failure to perform an act it is required to perform, regardless of the party's intent to relinquish the right. ( *Engalla, supra,* 15 Cal.4th at p. 983; *Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 315 [24 Cal.Rptr.2d 597, 862 P.2d 158].) In the arbitration context, "[t]he term 'waiver' has also been used as a shorthand statement for the conclusion that a contractual right to arbitration has been lost." (*Platt Pacific, Inc. v. Andelson, supra,* 6 Cal.4th at p. 315.)

*Engalla, supra,* 15 Cal.4th at p. 983; *Martinez v. Scott Specialty Gases, Inc.* (2000) 83 Cal.App.4th 1236, 1249–1250 [100 Cal.Rptr.2d 403]; *Adams v. Merrill Lynch Pierce Fenner & Smith* (10th Cir. 1989) 888 F.2d 696, 701; *Burton-Dixie Corp. v. Timothy McCarthy Construction Co.* (5th Cir. 1971) 436 F.2d 405, 408; *Brownyard v. Maryland Casualty Co.* (D.S.C. 1994) 868 F.Supp. 123, 126.) " 'In the past, California courts have found a waiver of the right to demand arbitration in a variety of contexts, ranging from situations in which the party seeking to compel arbitration has previously taken steps inconsistent with an intent to invoke arbitration [citations] to instances in which the petitioning party has unreasonably delayed in undertaking the procedure. [Citations.] The decisions likewise hold that the "bad faith" or "wilful misconduct" of a party may constitute a waiver and thus justify a refusal to compel arbitration. [Citations.]' " (*Engalla, supra,* 15 Cal.4th at p. 983, quoting *Davis v. Blue Cross of Northern California* (1979) 25 Cal.3d 418, 425–426 [158 Cal.Rptr. 828, 600 P.2d 1060].)

In *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980 [72 Cal.Rptr.2d 43], the Court of Appeal referred to the following factors: "In determining waiver, a court can consider '(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.' " (*Sobremonte v. Superior Court, supra,* 61 Cal.App.4th at p. 992, quoting *Peterson v. Shearson/American Exp., Inc.* (10th Cir. 1988) 849 F.2d 464, 467–468.) We agree these factors are relevant and properly considered in assessing waiver claims.

■ Generally, the determination of waiver is a question of fact, and the trial court's finding, if supported by sufficient evidence, is binding on the appellate court. (*Platt Pacific, Inc. v. Andelson, supra,* 6 Cal.4th at p. 319; see also *Engalla, supra,* 15 Cal.4th at p. 983.) "When, however, the facts are undisputed and only one inference may reasonably be drawn, the issue is one of law and the reviewing court is not bound by the trial court's ruling." (*Platt Pacific, Inc. v. Andelson, supra,* 6 Cal.4th at p. 319.) In the case before us, the essential facts are not disputed.

As reflected by its order, the trial court's waiver finding was based on the circumstances that (1) by seeking declaratory relief that the June 2000 HSA is

void *ab initio,* "PacifiCare essentially contends and asserts that [the contract] is invalid and unenforceable" and (2) although PacifiCare did not initiate the Fresno action, it initiated the Los Angeles lawsuit and at no time sought to invoke the contractual right to arbitration before doing so.

Saint Agnes agrees that a waiver occurred, observing that PacifiCare's "total repudiation" of the June 2000 HSA, its initiation of the Los Angeles action, and its attempts to force litigation in the judicial venues it preferred, all amounted to conduct inconsistent with a right to arbitrate. Saint Agnes also contends the Court of Appeal erred when it reversed the trial court's order on the ground that Saint Agnes had not established prejudice resulting from PacifiCare's delay in seeking to compel arbitration.

We address these matters below.

### A. *PacifiCare's Challenge to the Validity of the June 2000 HSA*

The trial court's order states: "PacifiCare essentially contends and asserts that the [June 2000] HSA is invalid and unenforceable." PacifiCare acknowledges that it seeks to have the June 2000 HSA declared void *ab initio* and to have the parties' rights under the 1994 HSA enforced as if the later contract never existed.

Under the authority of *Bertero, supra,* 216 Cal.App.2d 213, the trial court ruled that PacifiCare waived its arbitration rights by repudiating the very contract from which those rights originated. *Bertero,* apparently, has never been disapproved or criticized by any subsequent decision or secondary authority.

In *Bertero,* an employee and his employer signed a written employment contract and a written modification of that contract, both of which contained an arbitration clause. Although they adhered to the contractual terms for several years, the employer eventually sent the employee a letter claiming the modified contract was invalid and unenforceable. The employee sued to enforce the contract and the employer sought to compel arbitration. (*Bertero, supra,* 216 Cal.App.2d at pp. 214–216.)

Relying on Corbin on Contracts and decisions from other states, *Bertero* held that the employer's repudiation of the entire employment contract deprived it of any right to rely on any provision of the contract, including its arbitration clause: "[T]o say in . . . a letter that the contract is 'invalid and unenforceable' could mean only that it created no rights or duties which either party could stand upon." (*Bertero, supra,* 216 Cal.App.2d at p. 220.) *Bertero* rejected the argument that the letter meant that the employee's

asserted right to contract benefits was invalid but that the employer's right to arbitration was not invalid, remarking, "No more precise and emphatic language could have been chosen to notify Bertero that the company was declaring its independence without qualification or reservation. [¶] . . . [¶] . . . When National said 'the agreement' was not enforceable, it was saying that the portion relating to arbitration was not enforceable." (*Id.* at pp. 220–221.) "Thus it is not because National has repudiated its promise to pay Bertero's salary, but because it has repudiated its promise to arbitrate, that Bertero was justified in resorting to the courts." (*Id.* at p. 221.)

Although *Bertero* appears to support a waiver finding here, significant developments in the law have occurred since 1963 when that case was decided. Both federal and California law now hold that, in the absence of a specific attack on an arbitration agreement, such agreement generally must be enforced even if one party asserts the invalidity of the contract that contains it.

Significantly, a few years after *Bertero* the United States Supreme Court decided *Prima Paint v. Flood & Conklin* (1967) 388 U.S. 395 [18 L.Ed.2d 1270, 87 S.Ct. 1801] (*Prima Paint*). That decision recognized the principle that "*except where the parties otherwise intend*—arbitration clauses as a matter of federal law are 'separable' from the contracts in which they are embedded, and that where no claim is made that fraud was directed to the arbitration clause itself, a broad arbitration clause will be held to encompass arbitration of the claim that the contract itself was induced by fraud." (*Prima Paint, supra,* 388 U.S. at p. 402, quoting and thereafter adopting the view of the Second Circuit Court of Appeals.) In concluding that federal courts may consider a claim of fraud in the inducement of an arbitration clause itself, but not a claim of fraud in the inducement of the contract generally, the high court sought to "honor the plain meaning of [the FAA]" and "also the unmistakably clear congressional purpose that the arbitration procedure, when selected by the parties to a contract, be speedy and not subject to delay and obstruction in the courts." (*Prima Paint, supra,* 388 U.S. at p. 404.)

The logic of *Prima Paint* has led many courts, including this one, to hold that contractual arbitration clauses generally must be enforced where one of the parties seeks rescission of the entire contract on the basis that it allegedly was induced by fraud, mistake, or duress, or where an alleged breach of a warranty or other promise justifies the aggrieved party in putting an end to the contract. (E.g., *Ericksen, Arbuthnot, McCarthy, Kearney & Walsh, Inc. v. 100 Oak Street* (1983) 35 Cal.3d 312, 319, 322–323 [197 Cal.Rptr. 581, 673 P.2d 251] [fraudulent inducement claim is subject to arbitration]; *Large v. Conseco Finance Servicing Corp.* (1st Cir. 2002) 292 F.3d 49, 53 [mere assertion of statutory right of rescission does not undo obligation to take

rescission claim to arbitration]; *Burden v. Check Into Cash of Kentucky, LLC* (6th Cir. 2001) 267 F.3d 483, 489–490 [claim of illegality]; *Coleman v. Prudential Bache Securities, Inc.* (11th Cir. 1986) 802 F.2d 1350, 1352 [claims of fraudulent inducement and coercion]; *Mesa Operating Ltd. Partnership v. Louisiana Intrastate Gas Corp.* (5th Cir. 1986) 797 F.2d 238, 244 [claim of illegality]; see also *Rosenthal v. Great Western Fin. Securities Corp.*, *supra*, 14 Cal.4th at p. 415, fn. 8.)

█ As we explained, the central rationale of *Prima Paint* was that an arbitration clause is separable from other portions of a contract, such that fraud in the inducement relating to other contractual terms does not render an arbitration clause unenforceable, even when such fraud might justify rescission of the contract as a whole. (*Rosenthal v. Great Western Fin. Securities Corp.*, *supra*, 14 Cal.4th at p. 416.) "By entering into the arbitration agreement, the parties established their intent that disputes coming within the agreement's scope be determined by an arbitrator rather than a court; this contractual intent must be respected even with regard to claims of fraud in the inducement of the contract generally." (*Ibid.*) In light of *Prima Paint* and its progeny, we disapprove *Bertero v. Superior Court*, *supra*, 216 Cal.App.2d 213, to the extent it holds that a party's assertion of the invalidity of an entire contract categorically waives that party's right to arbitrate pursuant to a provision in that contract.

Here, the June 2000 HSA names PacifiCare and Saint Agnes as contracting parties and reflects the signatures of both parties' agents. Neither party challenges its assent to the June 2000 HSA; nor does either specifically challenge the arbitration clause contained therein. Indeed, PacifiCare filed a declaration claiming it had performed its obligations according to the terms of the June 2000 HSA prior to notifying Saint Agnes and others in March 2001 that it considered the contract terminated due to a condition subsequent. Consequently, the record makes reasonably clear PacifiCare's position that it could properly view the June 2000 HSA as terminated or void due to an event transpiring after its effective date. █ On this record, *Prima Paint*'s recognition of the separable nature of arbitration agreements compels us to conclude that the arbitration clause in the June 2000 HSA is sufficient to require arbitration of Saint Agnes's claims relating to that contract.

Seizing on PacifiCare's allegations in the Los Angeles lawsuit that the June 2000 HSA is void *ab initio* and PacifiCare's concession that it seeks damages for breach of the 1994 HSA as if the later contract never existed, Saint Agnes argues this situation falls within an exception to the *Prima Paint* line of cases. Specifically, Saint Agnes points to authorities holding or recognizing that because arbitration is a matter of contract, a party cannot be required to submit to arbitration any dispute that it did not agree to so submit. (E.g.,

*Rosenthal v. Great Western Fin. Securities Corp., supra,* 14 Cal.4th 394; *Banner Entertainment, Inc. v. Superior Court* (1998) 62 Cal.App.4th 348 [72 Cal.Rptr.2d 598]; *Sandvik AB v. Advent International Corp.* (3d Cir. 2000) 220 F.3d 99; *Three Valleys Municipal Water District v. E.F. Hutton & Co., Inc.* (9th Cir. 1991) 925 F.2d 1136.) In those cases, the issue was not whether the underlying contract was merely voidable, but rather whether any contract had ever existed. (*Rosenthal v. Great Western Fin. Securities Corp., supra,* 14 Cal.4th at pp. 416–417 [parties opposing arbitration claimed contracts were void for fraud in their execution or inception]; *Banner Entertainment, Inc. v. Superior Court, supra,* 62 Cal.App.4th at pp. 358–361 [while evidence showed plaintiff's oral agreement to specified dealings with defendant, it failed to show any agreement, oral or otherwise, to arbitrate]; *Sandvik AB v. Advent International Corp., supra,* 220 F.3d at p. 100 [party moving for arbitration alleged that individual who signed agreement on its behalf lacked authority to do so]; *Three Valleys Municipal Water District v. E.F. Hutton & Co., Inc., supra,* 925 F.2d at p. 1138 [party resisting arbitration claimed contract was invalid because unauthorized individual signed it].)

The decisions Saint Agnes cites have a logical rationale: If a party can show that it did not know it was signing a contract, or that it did not enter into a contract at all, both the contract and its arbitration clause are void for lack of mutual assent. (See *Rosenthal v. Great Western Fin. Securities Corp., supra,* 14 Cal.4th at pp. 416–417; *Banner Entertainment, Inc. v. Superior Court, supra,* 62 Cal.App.4th at pp. 358–359; *Sandvik AB v. Advent International Corp., supra,* 220 F.3d at pp. 106–108; *Three Valleys Municipal Water District v. E.F. Hutton & Co., Inc., supra,* 925 F.2d at pp. 1140–1141.) But that rationale has no application here because, notwithstanding Pacifi-Care's use of certain legal terminology, neither PacifiCare nor Saint Agnes denies its knowing and voluntary agreement to the June 2000 HSA and the terms it contained. Moreover, PacifiCare's petition to compel arbitration reflects its apparent position that it considered itself bound to perform under the June 2000 HSA at least until March 2001, when it notified Saint Agnes that the contract was terminated. Accordingly, this is not a case where mutual assent to the subject contract and its terms was lacking.

 In sum, we conclude that PacifiCare's legal challenge to the validity of the June 2000 HSA is not inconsistent with an intent to invoke arbitration pursuant to that contract. Contrary to Saint Agnes's contentions, PacifiCare's repudiation as such does not amount to a waiver of its contractual arbitration rights.

B. *PacifiCare's Initiation of the Los Angeles Lawsuit*

*Doers, supra,* 23 Cal.3d 180, held that the mere filing of a lawsuit does not waive contractual arbitration rights. (*Doers,* at pp. 185–188; see also *Kalai v.*

*Gray* (2003) 109 Cal.App.4th 768, 774 [135 Cal.Rptr.2d 449]; *Johnson v. Siegel* (2000) 84 Cal.App.4th 1087, 1099 [101 Cal.Rptr.2d 412]; accord, *Merrill Lynch, Pierce, Fenner & Smith v. Lecopulos* (2d Cir. 1977) 553 F.2d 842, 845; *Chatham Shipping Co. v. Fertex Steamship Corp.* (2d Cir. 1965) 352 F.2d 291, 293; *Realco Enterprises, Inc. v. Merrill Lynch, Pierce, Fenner & Smith* (S.D.Ga. 1990) 738 F.Supp. 515, 518–519, and cases cited therein.) Although *Doers* phrased the issue as one of "waiver," we more recently characterized the critical issue there as "whether a party's filing of a lawsuit in the face of an agreement to arbitrate was conduct so inconsistent with the exercise of the right to arbitration as to constitute an abandonment of that right." (*Platt Pacific, Inc. v. Andelson, supra,* 6 Cal.4th at p. 318.)

■ In finding that the filing of a lawsuit, without more, does not result in a waiver (and is not so inconsistent with the exercise of the right to arbitration as to constitute an abandonment of that right), *Doers* disapproved several Court of Appeal decisions that had misinterpreted other precedents holding only that waiver occurs when the parties have litigated the merits of the arbitrable dispute. (*Doers, supra,* 23 Cal.3d at pp. 185–188.) *Doers* reiterated the rule that a waiver generally does not occur where the arbitrable issues have not been litigated to judgment. (*Id.* at p. 188.)

Here, PacifiCare did not initiate the instant Fresno action, in which it seeks to compel arbitration. PacifiCare did, however, initiate the Los Angeles action to have the June 2000 HSA declared void *ab initio* and to enforce its rights under the 1994 HSA, a contract that contains no arbitration clause and that allegedly governs the parties' rights and obligations if the June 2000 HSA were to be found unenforceable. ■ Significantly, Saint Agnes's arbitrable causes of action have not been litigated to judgment or judicially addressed on their merits. Consistent with *Doers,* we conclude that PacifiCare's mere filing of the Los Angeles action did not constitute a waiver of its right under the June 2000 HSA to seek arbitration in this Fresno action. (Accord, *American Recovery Corp. v. Computerized Thermal Imaging, Inc.* (4th Cir. 1996) 96 F.3d 88, 95–96; *Lawrence v. Comprehensive Business Services Co.* (5th Cir. 1987) 833 F.2d 1159, 1164–1165; cf. *Christensen v. Dewor Developments, supra,* 33 Cal.3d at pp. 783–784 [waiver found where plaintiff knew of existence of arbitration clause and arbitrability of its claims, but filed suit without first demanding arbitration and pursued litigation through several demurrers for admitted purpose of obtaining verified pleadings from defendants that would reveal their legal theories, resulting in lost evidence].)

*Charles J. Rounds Co. v. Joint Council of Teamsters No. 42* (1971) 4 Cal.3d 888 [95 Cal.Rptr. 53, 484 P.2d 1397] (*Charles J. Rounds*) does not compel us to hold otherwise. In that case, the trial court had dismissed a

plaintiff employer's contract action against a defendant union on the ground that the dispute at issue was covered by an arbitration clause in the agreement. As relevant here, the issue presented was whether "the relief granted was proper in this case—dismissal of the action—or whether a stay of judicial proceedings pending arbitration should have been granted." (*Charles J. Rounds, supra,* 4 Cal.3d at p. 894.) We upheld the dismissal, observing that the only matter in dispute came within the scope of the arbitration clause, that the plaintiff had never attempted to pursue its arbitration remedy despite the defendant's efforts to obtain arbitration, and that because the plaintiff sought relief that traditionally was within an arbitrator's power to award, dismissal of the action, rather than a mere stay of proceedings, was proper. (*Id.* at p. 899.)

Saint Agnes appears to read *Charles J. Rounds* as precluding any party who "repudiates" arbitration by filing a lawsuit from ever enforcing its contractual arbitration rights. In particular, Saint Agnes relies on a passage in *Charles J. Rounds* stating that "where the only issue litigated is covered by the arbitration clause, and where plaintiff has not first pursued or attempted to pursue his arbitration remedy, it should be held that . . . plaintiff has impliedly waived his right to arbitrate." (*Charles J. Rounds, supra,* 4 Cal.3d at p. 899.)

Preliminarily we observe that, to the extent the foregoing passage can be read to suggest that a party may waive its right to arbitration merely by filing a lawsuit without first requesting arbitration, our holding to the contrary in *Doers, supra,* 23 Cal.3d 180, controls. (See *Kalai v. Gray, supra,* 109 Cal.App.4th at p. 774.) But *Charles J. Rounds* held only that dismissing the judicial action there, as opposed to staying it, was appropriate because the *sole* issue in dispute was properly subject to arbitration. Viewed in context, *Charles J. Rounds* provides no support for denying arbitration of arbitrable claims in an action where, as here, the party seeking arbitration did not file the lawsuit in which arbitration is sought, but had initiated a separate lawsuit containing *nonarbitrable* causes of action.[5] (See *Charles J. Rounds, supra,* 4 Cal.3d at pp. 898–899.)

Nor can Saint Agnes credibly claim that PacifiCare waived its contractual right to arbitration by unequivocally refusing to arbitrate. (See *Local 659, I.A.T.S.E. v. Color Corp. Amer.* (1956) 47 Cal.2d 189 [302 P.2d 294] [waiver and repudiation found where plaintiff refused defendant's repeated demands to comply with a contractual arbitration clause].) As the record discloses, Saint Agnes never requested arbitration of the Fresno and the Los Angeles

---

[5] As indicated earlier, PacifiCare's nonarbitrable causes of action seek damages and/or other relief against Saint Agnes and other parties arising out of the 1994 HSA and other instruments having no arbitration clause but potentially affecting the parties' rights and obligations if the June 2000 HSA is not enforced.

actions; Saint Agnes, in fact, rebuffed PacifiCare's informal request and offer to arbitrate before the instant petition to compel arbitration was filed.

## C. *Prejudice from Participating in Litigation*

More than two decades ago, we observed that "[u]nder federal law, it is clear that the mere filing of a lawsuit does not waive contractual arbitration rights. The presence or absence of prejudice from the litigation of the dispute is the determinative issue under federal law." (*Doers, supra,* 23 Cal.3d at p. 188, fn. omitted, relying on *Merrill Lynch, Pierce, Fenner & Smith v. Lecopulos, supra,* 553 F.2d at p. 845; *Demsey & Associates v. S.S. Sea Star* (2d Cir. 1972) 461 F.2d 1009, 1018; *Chatham Shipping Co. v. Fertex Steamship Corp., supra,* 352 F.2d at p. 293.) Our review of more recent federal authorities discloses that this rule remains largely intact.[6]

In California, whether or not litigation results in prejudice also is critical in waiver determinations. (*Keating v. Superior Court* (1982) 31 Cal.3d 584, 605 [183 Cal.Rptr. 360, 645 P.2d 1192], disapproved on other grounds, *Southland Corp. v. Keating* (1983) 465 U.S. 1 [79 L.Ed.2d 1, 104 S.Ct. 852]; *Doers, supra,* 23 Cal.3d at pp. 188–189; *Davis v. Continental Airlines, Inc.* (1997) 59 Cal.App.4th 205, 212 [69 Cal.Rptr.2d 79].) That is, while " '[w]aiver does not occur by mere participation in litigation' " if there has been no judicial litigation of the merits of arbitrable issues, " ' "waiver could occur prior to a judgment on the merits if prejudice could be demonstrated." ' " (*Christensen v. Dewor Developments, supra,* 33 Cal.3d at p. 782.)

Because merely participating in litigation, by itself, does not result in a waiver, courts will not find prejudice where the party opposing arbitration shows only that it incurred court costs and legal expenses. (See *Groom v. Health Net* (2000) 82 Cal.App.4th 1189, 1197 [98 Cal.Rptr.2d 836] [mere expense of responding to motions or other preliminary pleadings filed in court is not the type of prejudice that bars a later petition to compel arbitration]; accord, *Crysen/Montenay Energy Co. v. Shell Oil Co.* (2d Cir. 2000) 226 F.3d 160, 163.)

---

[6] (E.g., *Creative Solutions Group, Inc. v. Pentzer Corp.* (1st Cir. 2001) 252 F.3d 28, 32; *American Recovery Corp. v. Computerized Thermal Imaging, Inc., supra,* 96 F.3d at pp. 95–96; *Walker v. J.C. Bradford & Co., supra,* 938 F.2d at p. 577; *Fisher v. A.G. Becker Paribas Inc.* (9th Cir. 1986) 791 F.2d 691, 694; *Rush v. Oppenheimer & Co.* (2d Cir. 1985) 779 F.2d 885, 887; *Tenneco Resins, Inc. v. Davy Int'l, AG* (5th Cir. 1985) 770 F.2d 416, 420–422; *Creative Telecommunications, Inc. v. Breeden* (D. Hawaii 1999) 120 F.Supp.2d 1225, 1232; *Realco Enterprises, Inc. v. Merrill Lynch, Pierce, Fenner & Smith, Inc., supra,* 738 F.Supp. at p. 518; cf. *Cabinetree of Wisconsin, Inc. v. Kraftmaid Cabinetry, Inc.* (7th Cir. 1995) 50 F.3d 388, 390 [admittedly taking "the minority position" in holding that prejudice is not required to find waiver of right to arbitrate].)

Rather, courts assess prejudice with the recognition that California's arbitration statutes reflect " 'a strong public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution' " and are intended " 'to encourage persons who wish to avoid delays incident to a civil action to obtain an adjustment of their differences by a tribunal of their own choosing.' " (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899].) Prejudice typically is found only where the petitioning party's conduct has substantially undermined this important public policy or substantially impaired the other side's ability to take advantage of the benefits and efficiencies of arbitration.

For example, courts have found prejudice where the petitioning party used the judicial discovery processes to gain information about the other side's case that could not have been gained in arbitration (e.g., *Berman v. Health Net* (2000) 80 Cal.App.4th 1359, 1366 [96 Cal.Rptr.2d 295]; *Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 558 [94 Cal.Rptr.2d 201]; *Davis v. Continental Airlines, Inc., supra,* 59 Cal.App.4th at p. 215); where a party unduly delayed and waited until the eve of trial to seek arbitration (e.g., *Sobremonte v. Superior Court, supra,* 61 Cal.App.4th at pp. 995–996); or where the lengthy nature of the delays associated with the petitioning party's attempts to litigate resulted in lost evidence (e.g., *Christensen v. Dewor Developments, supra,* 33 Cal.3d at p. 784).

 The record in this case does not reflect that the parties have litigated the merits or the substance of Saint Agnes's arbitrable claims, or that any discovery of those claims has occurred. Nor is there any indication that PacifiCare used the Los Angeles and Fresno actions to gain information about Saint Agnes's case that otherwise would be unavailable in arbitration.[7] Finally, there appears no claim that PacifiCare's actions have impaired Saint Agnes's ability to have the arbitrable disputes in this action resolved fairly through arbitration.

Saint Agnes, however, claims it has been prejudiced because it incurred substantial costs and expenses in opposing PacifiCare's motion to change venue in this action, as well as PacifiCare's unsuccessful attempt to block a venue change to Fresno in its Los Angeles action.[8] This claim is not well taken.

---

[7] With regard to discovery, we note that the June 2000 HSA reflects the parties' agreement that "[c]ivil discovery for use in such arbitration may be conducted in accordance with the provisions of California law, and the arbitrator(s) selected shall have the power to enforce the rights, remedies, duties, liabilities and obligations of discovery by the imposition of the same terms, conditions and penalties as can be imposed in like circumstances in a civil action by a court of competent jurisdiction of the State of California."

[8] Although Saint Agnes submitted two declarations generally referring to the "substantial" and "significant" legal fees and costs it incurred, the declarations provided no details as to

■ Although we have found no California or United States Supreme Court decisions on point, other courts that have addressed this issue hold that a petitioning party does not waive its arbitration rights merely by seeking to change judicial venue of an action prior to requesting arbitration. (E.g., *American Heart Disease Prevention Foundation, Inc. v. Hughey* (4th Cir. 1997) 106 F.3d 389; *Thompson v. Skipper Real Estate Co.* (Ala. 1999) 729 So.2d 287, 292–293; but see *R.W. Roberts Construction Co., Inc. v. Masters & Co., Inc.* (Fla.Dist.Ct.App. 1981) 403 So.2d 1114, 1115 [upholding trial court's waiver finding without addressing the matter of prejudice].) In so holding, those courts reason that a party is not required to litigate the issue of arbitration in an improper or inconvenient venue, and that a party's position on venue does not necessarily reflect a position on arbitrability. We agree with that reasoning, and find it consistent with California and federal case law holding that a waiver determination requires the consideration of all circumstances, including the absence or presence of prejudice.

■ Under the foregoing authorities, PacifiCare did not waive or otherwise forfeit its contractual arbitration rights by seeking to transfer venue of the Fresno action or by opposing a venue change of the Los Angeles action. Although PacifiCare did not prevail on its venue positions, there has been no finding that it acted wrongly in asserting them. Moreover, both the Los Angeles and Fresno lawsuits involve nonarbitrable causes of action that belong in court; this circumstance further reinforces the conclusion that PacifiCare's efforts to secure a particular judicial venue for each action are not so inconsistent with the exercise of the right to arbitration as to constitute a waiver of that right.

■ Because PacifiCare's venue-related efforts do not support an inference of waiver, it follows logically that the costs and expenses Saint Agnes incurred in responding to such efforts likewise do not support a finding of waiver or prejudice. (See *Becker v. DPC Acquisition Corp.* (S.D.N.Y. May 30, 2002, No. 00-Civ. 1035) 2002 U.S. Dist. LEXIS 9605, *40.)[9]

---

specific dollar amounts or time spent on the venue matters. Other documents in the record, however, indicate that Saint Agnes incurred at least $4,460 on venue-related matters in the Los Angeles action.

[9] Saint Agnes additionally makes an estoppel claim based on the same facts that predicate its claim of waiver. We reject this claim. As explained above, PacifiCare may properly invoke the arbitration clause while simultaneously contending the June 2000 HSA is not enforceable. Moreover, we cannot say that PacifiCare should be estopped from asserting its arbitration rights based on its filing of the Los Angeles lawsuit and its venue efforts in the two actions because, among other things, both actions contain nonarbitrable claims.

CONCLUSION AND DISPOSITION

When the facts are undisputed and only one inference may reasonably be drawn, the issue of waiver is one of law and the reviewing court is not bound by the trial court's ruling. (*Platt Pacific, Inc. v. Andelson, supra,* 6 Cal.4th at p. 319.) Here, the only reasonable inference we can draw from the record and its undisputed facts is that PacifiCare did not waive its contractual right to arbitration under the June 2000 HSA.

The judgment of the Court of Appeal is affirmed.

George, C. J., Kennard, J., Werdegar, J., Chin, J., Brown, J., and Moreno, J., concurred.