Filed 2/25/14  Brown v. Beverly Hills Surgery Center CA2/7

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION SEVEN

| | |
|---|---|
| BETTY A. BROWN, Individually and as Executor, etc., et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> BEVERLY HILLS SURGERY CENTER, LLC, et al., <br><br> Defendants and Appellants. | B243494 <br><br> (Los Angeles County Super. Ct. No. BC468944) <br><br><br> ORDER MODIFYING OPINION (NO CHANGE IN JUDGMENT) |

THE COURT:

Due to clerical error, the decedent, Tamara Walter, was incorrectly referred to as Tamara Walker.  Accordingly, all references to "Walker" are hereby changed to Walter.

There is no change in the judgment.

_____

PERLUSS, P. J.          WOODS, J.          ZELON, J.

Filed 2/18/14  Brown v. Beverly Hills Surgery Center CA2/7  (unmodified version)

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| BETTY A. BROWN, Individually and as Executor, etc., et al., <br><br> Plaintiffs and Respondents, <br><br> v. <br><br> BEVERLY HILLS SURGERY CENTER, LLC, et al., <br><br> Defendants and Appellants. | B243494 <br><br> (Los Angeles County <br> Super. Ct. No. BC468944) |

APPEAL from an order of the Superior Court of Los Angeles County, Norman P. Tarle, Judge.  Affirmed.

Bonne, Bridges, Mueller, O'Keefe & Nichols, David J. O'Keefe and Vangi M. Johnson, for Defendants and Appellants Beverly Hills Surgery Center, LLC, Top Surgeons, LLC, and 1-800-Get-Thin, LLC.

Blumberg Law Corporation, Ave Buchwald and John P. Blumberg, for Plaintiffs and Respondents Betty A. Brown, Individually and as Executor of the Estate of Tamara Walter, Ed Pennings and Gamble Lancaster.

_____

Beverly Hills Surgery Center, LLC, Top Surgeons, LLC, doing business as Weight Loss Centers, and 1-800-Get-Thin, LLC (collectively the surgery center defendants) appeal from an order denying their petition to compel arbitration in this wrongful death action brought by Betty Brown, Ed Pennings and Gamble Lancaster, the surviving adult siblings of Tamara Walker (collectively the Walker plaintiffs).[1]  After spending several months defending the action, the surgery center defendants petitioned to compel arbitration based on the arbitration provisions in several contracts Walker had signed prior to undergoing bariatric surgery.  The superior court denied the petition, finding the surgery center defendants had waived any contractual right to arbitrate the claims against them.  We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Complaint*

On September 2, 2011 the Walker plaintiffs filed this action in Los Angeles County Superior Court, Central District, alleging 52-year-old Walker had died after undergoing bariatric surgery on December 23, 2010 and asserting causes of action against the surgery center defendants and several others for medical malpractice, intentional and negligent misrepresentation, negligent referral, negligent hiring and negligent supervision.

### 2. *The Surgery Center Defendants' Active Motion and Discovery Practice*

On November 18, 2011 Top Surgeons and 1-800-Get-Thin demurred to the complaint and moved to strike allegations relating to punitive damages.  On December 16, 2011 Beverly Hills Surgery Center appeared and demurred to the two causes of action alleged against it.  It also moved to transfer the matter to the superior court's Western District (Santa Monica), contending the lawsuit had been improperly filed in the Central District.  None of the demurrers or motions mentioned an arbitration agreement.

---

[1]     Brown filed the lawsuit both in her individual capacity and as executor of Walker's estate.

Beginning in December 2011 the surgery center defendants served broad ranging written discovery requests on the Walker plaintiffs, including two sets of form interrogatories, special interrogatories, requests for admissions and multiple requests for production of documents. The surgery center defendants also responded to the Walker plaintiffs' similarly extensive written discovery requests.

In February 2012 the trial court granted Beverly Hills Surgery Center's motion to transfer the lawsuit to the Western District. On April 9, 2012 the surgery center defendants moved to compel further responses to interrogatories and document requests and sought discovery sanctions.

The surgery center defendants deposed each of the three Walker plaintiffs for several days in April 2012. In addition, Beverly Hills Surgery Center jointly noticed (along with another defendant who is not a party to the appeal) the deposition of Courtney Brown, Walker's former ward, and agreed to produce Charles Klasky, the surgery center defendants' managing representative, for his noticed deposition once the depositions of all three Walker plaintiffs had been completed. At no time during this active discovery process did the surgery center defendants disclose the existence of the arbitration agreements.

On June 1, 2012 the court sustained the surgery center defendants' demurrers to most of the causes of action with leave to amend and denied their motions to strike. On June 5, 2012 the Walker plaintiffs filed their first amended complaint.

On June 13, 2012 the surgery center defendants participated in the deposition of Courtney Brown. In a letter dated the same day, the surgery center defendants notified the Walker plaintiffs of their intent to petition to compel arbitration in accordance with the arbitration agreements Walker had signed unless the Walker plaintiffs stipulated to resolving their action in the arbitral forum. The Walker plaintiffs contested the

3

enforceability of the arbitration provision but agreed to stay additional discovery pending resolution of the arbitration controversy.[2]

3. *The Petition To Compel Arbitration*

On June 15, 2012 the surgery center defendants filed their petition to compel arbitration of the claims against them based on six separate arbitration agreements Walker had signed prior to her surgery.[3] Neither the petition nor the supporting papers offered any explanation for the delay in seeking arbitration.

The Walker plaintiffs opposed the petition, arguing (1) the arbitration agreements executed prior to December 23, 2010, the day of Walker's bariatric surgery, were improperly authenticated and inadmissible; (2) the agreement to arbitrate signed on December 23, 2010 was unenforceable because Walker had died within the agreement's 30-day rescission period; (3) only Beverly Hills Surgery Center had standing to enforce the agreements; and (4) the surgery center defendants had waived any right to compel arbitration.

In their reply papers the surgery center defendants insisted, among other things, they had not waived their right to compel arbitration. Emphasizing the trial court had only ruled on their demurrers and motions to strike on June 1, 2012, they argued "[t]he

---

[2]     The surgery center defendants' motions to compel were taken off calendar at that time.

[3]     Each of the six agreements provided, "It is understood that any dispute as to medical malpractice, that is as to whether any medical services rendered under this contract was [*sic*] unnecessary or unauthorized or were improperly, negligently or incompetently rendered, will be determined by submission to arbitration as provided by California law, and not by a lawsuit or resort to court process except as California law provides for judicial review of arbitration proceedings. Both parties to this contract, by entering into it, are giving up their constitutional right to have any such dispute decided in a court of law before a jury, and instead are accepting the use of arbitration. [¶] It is the intention of the parties that this Agreement bind <u>all parties</u> whose claims may arise out of or relate to the treatment or services provided . . . . [¶] All claims against the health care provider, physician, surgeon, and/or any partners, associates, associations, corporations or partnerships, and the employees, agents, independent contractors and/or estates of any of them, must be arbitrated, including without limitation, claims for loss of consortium, wrongful death, wrongful life, emotional distress or punitive damages . . . ."

4

lengthy [nine-month] gap between the filing of the initial [c]omplaint and [the surgery center] defendants' demand to compel arbitration [wa]s due primarily to the inability of defendants to have their [demurrers and motions to strike] heard quickly. This was not in control of the [surgery center] defendants." They did not offer any other explanation for their delay in seeking arbitration.[4]

After hearing argument and taking the matter under submission, the trial court denied the petition. Assuming without deciding there was a valid arbitration agreement enforceable by each of the surgery center defendants and all claims fell within the scope of that agreement, the court found the surgery center defendants had waived (forfeited) their contractual right to arbitrate. In its August 21, 2012 order the court explained: "Defendants argue it's 'not their fault' so much time elapsed, as it was due in large part to the court's inability to hear the demurrers earlier. This is not the point. The point is that, if Defendants wanted to compel arbitration, they should have done that first, not after filing demurrers and motions to strike. The Court finds Defendants waived their right to move to compel arbitration by filing demurrers and motions to strike, propounding and responding to discovery, and failing to file this motion until [June 15, 2012], more than six months after they initially appeared in connection with the case."

---

[4]    At the hearing on the petition to compel arbitration, the court expressed doubt about the surgery center defendants' purported lack of knowledge of the arbitration agreements. Counsel for the surgery center defendants explained she, as well as her predecessor counsel, had been unaware of the arbitration agreements due to staff turnover in the surgery center defendants' general counsel's office; and she had acted promptly to compel arbitration once she learned of them. When counsel for the Walker plaintiffs appeared to question those representations, the court interjected, making clear it took counsel at her word with regard to her own actions and those of her predecessor counsel, but distinguished between counsel's ignorance of the arbitration agreements and that of her clients.

# DISCUSSION

### 1. *Governing Law and Standard of Review*

California's strong public policy favors arbitration as a relatively quick and cost-effective means to resolve disputes. (*Moncharsh v. Heily & Blase* (1992) 3 Cal.4th 1, 9; *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1195 (*St. Agnes*); *Engalla v. Permanente Medical Group, Inc.* (1997) 15 Cal.4th 951, 971-972.) Absent certain limited exceptions, California law requires the trial court to enforce a valid written agreement to arbitrate any controversy that falls within the scope of the agreement unless "the right to compel arbitration has been waived" by the moving party. (Code Civ. Proc., § 1281.2, subd. (a).)[5]

"In the arbitration context, '[t]he term "waiver" [is] used as a shorthand statement for the conclusion that a contractual right to arbitration has been lost.'" (*St. Agnes, supra,* 31 Cal.4th at p. 1195, fn. 4; accord, *Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 315.) "This does not require a voluntary relinquishment of a known right; to the contrary, a party may be said to have 'waived' its right to arbitrate by an untimely demand, even without intending to give up the remedy. In this context, waiver is more like a forfeiture arising from the nonperformance of a required act." (*Burton v. Cruise* (2010) 190 Cal.App.4th 939, 944; accord, *Platt Pacific, Inc.,* at pp. 314-315.)

In light of the strong public policy favoring arbitration, claims of waiver are subject to "close judicial scrutiny," and the "party seeking to establish a waiver bears a heavy burden" with all doubts resolved in favor of arbitration. (*St. Agnes, supra,* 31 Cal.4th at p. 1195; *Lewis v. Fletcher Jones Motor Cars, Inc.* (2012) 205 Cal.App.4th 436, 443.) While "no single test" can delineate all the possible conduct that may constitute a waiver of arbitration (*St. Agnes,* at p. 1195), in assessing whether waiver has

---

[5]     Federal law, which also recognizes and enforces a strong public policy favoring arbitration (*St. Agnes, supra,* 31 Cal.4th at p. 1204; *AT&T Mobility LLC v. Concepcion* (2011) 563 U.S. ___ [131 S.Ct. 1740, 1745, 179 L.Ed.2d 742]), similarly acknowledges the right to arbitrate may be forfeited under certain circumstances. (See *St. Agnes,* at p. 1195.) Here, neither party disputes the agreements are governed by California law, not the Federal Arbitration Act.

6

occurred, the trial court is guided by the six relevant factors identified by the Supreme Court in *St. Agnes*: "(1) [W]hether the party's actions are inconsistent with the right to arbitrate; (2) whether the litigation machinery has been substantially invoked and the parties were well into the preparation of a lawsuit before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place; and (6) whether the delay affected, misled or prejudiced the opposing party." (*Id.* at p. 1196 [second set of brackets in original; internal quotation marks omitted]; accord, *Lewis v. Fletcher Jones Motor Cars, Inc., supra,* 205 Cal.App.4th at p. 445; cf. *Burton v. Cruise, supra,* 190 Cal.App.4th at pp. 944-945 [applying a four factor test when two of the factors identified in *St. Agnes*—whether a defendant seeking arbitration had filed a counterclaim and whether important intervening steps had taken place—were not applicable].)

Waiver does not occur by "mere participation in litigation." (*St. Agnes, supra,* 31 Cal.4th at p. 1203.) There must also be prejudice. (*Id.* at pp. 1203-1204; *Hoover v. American Income Life Ins. Co.* (2012) 206 Cal.App.4th 1193, 1205 [prejudice is critical to the analysis of waiver; absent prejudice, there can be no waiver].) Prejudice, moreover, is not established merely by showing the nonmoving party has incurred costs and legal expenses in connection with the litigation. (*St. Agnes,* at p. 1203; *Roman v. Superior Court* (2009) 172 Cal.App.4th 1462, 1479.) Prejudice may arise, however, when the petitioning party has "unreasonably delayed" in seeking arbitration (*St. Agnes,* at pp. 1203-1204; *Burton v. Cruise, supra,* 190 Cal.App.4th at p. 947) or has substantially impaired an opponent's ability to obtain the benefits and efficiencies of arbitration. (*Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553, 555, 558, fn. 1; *Hoover,* at p. 1205; *Adolph v. Coastal Auto Sales, Inc.* (2010) 184 Cal.App.4th 1443, 1451-1452.)

"Generally, the determination of waiver is a question of fact, and the trial court's finding, if supported by sufficient evidence, is binding on the appellate court."

7

(*St. Agnes, supra,* 31 Cal.4th at p. 1196; accord, *Burton v. Cruise, supra,* 190 Cal.App.4th at p. 946 [""[i]t was the trial court's duty to determine whether" the petitioners met their "burden of proof; it is our duty to determine whether there is substantial evidence to support the trial court's findings that it did""].)  "We construe any reasonable inference in the manner most favorable to the judgment, resolving all ambiguities to support an affirmance." (*Burton,* at p. 946; accord, *Adolph v. Coastal Auto Sales, Inc., supra,* 184 Cal.App.4th at p. 1452.)  It is only when "'the facts are undisputed and only one inference may reasonably be drawn'" that the issue is one of law.  (*St. Agnes,* at p. 1196; accord, *Platt Pacific, Inc. v. Andelson, supra,* 6 Cal.4th at p. 319; *Hoover,* at p. 1202.)

2.  *The Trial Court's Finding of Waiver Is Supported by Substantial Evidence and Is Not Erroneous As a Matter of Law*

In challenging the trial court's waiver finding, the surgery center defendants focus their attention on whether "the litigation machinery ha[d] been substantially invoked" and whether their delay in seeking arbitration prejudiced the Walker plaintiffs.  They insist the answer to both questions is indisputably no, emphasizing the instant litigation is still in its early stages:  No trial date has been set; no responsive pleading to the first amended complaint has yet been filed; no experts have been designated; and no depositions have actually been taken by the Walker plaintiffs.  The "minimal discovery" that has taken place—the written discovery propounded and responded to by both sides and the completed depositions of the three plaintiffs and a plaintiff's witness—was preliminary in nature and would have been available in arbitration as well.[6]  Absent a showing the delay

---

[6]      Five of the six arbitration agreements state discovery shall be conducted pursuant to Code of Civil Procedure section 1283.05, which vests parties to an arbitration agreement with the same rights as provided in the statutes governing discovery in a judicial forum except that leave of the arbitrator is required before depositions may be taken.  As to that limiting requirement, however, the five agreements expressly state leave of the arbitrator is not required to take depositions. The December 23, 2010 agreement is slightly different:  It provides "[a]ll laws of California Civil Procedure shall apply including but not limited to discovery" unless the parties agree to waive such requirements.  It thus appears leave of the arbitrator would be required to conduct depositions under this agreement unless the parties waived this requirement.

has caused any actual prejudice, they argue, the evidence in this case is insufficient as a matter of law to sustain the court's findings of waiver. (See *St. Agnes, supra,* 31 Cal.4th at p. 1203; *Roman v. Superior Court, supra,* 172 Cal.App.4th at p. 1479; cf. *Burton v. Cruise, supra,* 190 Cal.App.4th at pp. 949, 950 [upholding trial court's finding of waiver where defendants participated in litigation for 11 months, filed several demurrers and motions to compel discovery, a trial date had been set, discovery taken and experts had been designated with a jury in mind].)[7]

The surgery center defendants present a solid case for an *initial* finding of nonwaiver. However, as discussed, our review is limited to determining whether the evidence is insufficient as a matter of law to support the trial court's finding of waiver. Construing all reasonable inferences in support of the court's order, as we must, the record simply does not establish nonwaiver as a matter of law. (See *Lewis v. Fletcher Jones Motor Cars, Inc., supra,* 205 Cal.App.4th at p. 453 ["[i]t is not enough the trial court potentially could have reached a different conclusion; rather, we may reverse the trial court's waiver finding only if the record establishes a lack of waiver as a matter of law"]; *Hoover v. American Income Life Ins. Co., supra,* 206 Cal.App.4th at p. 1202 [same].)

The surgery center defendants vigorously attacked the pleadings, filing demurrers and motions to strike; deposed each plaintiff; participated in the deposition of a nonparty witness; served and responded to extensive written discovery; and filed motions to compel coupled with requests for discovery sanctions. There can be little question they actively litigated in the judicial forum in a manner wholly inconsistent with any intent to arbitrate.

---

[7]     The surgery center defendants also argue that not all named defendants have appeared in the action. However, they fail to specify which nonappearing defendant will eventually appear in the action. Our review of the record indicates, as to the three named defendants that are not parties to the appeal, defaults have been entered against two of them (Dr. Daniel Shin and New Life Surgery Center, LLC) and the third appeared and answered the complaint on June 22, 2012, two months before the court denied the petition to compel arbitration.

The surgery center defendants attempt to minimize this litigation conduct, claiming, even if their participation in the litigation was substantial, it was not prejudicial. They contend, because no trial date had been set and no discovery obtained by any party that would not have been available in the arbitral forum, there can be no prejudice as a matter of law. Although both factors are properly considered as part of the waiver analysis, neither is dispositive. (See *Lewis v. Fletcher Jones Motor Cars, Inc., supra,* 205 Cal.App.4th at p. 453 [fact no trial date had yet been set is not dispositive on the question of waiver and prejudice; "numerous cases [have found] waiver in which no trial date [had been] set"]; *Roberts v. El Cajon Motors, Inc.* (2011) 200 Cal.App.4th 832, 844-845 & fn. 9 [same]; *Guess?, Inc. v. Superior Court, supra,* 79 Cal.App.4th at p. 558 [waiver found where moving party filed motions and participated in discovery, taking "full advantage of the opportunity to test the validity of Guess's claims both legally and factually" before seeking arbitration].)

The trial court found the surgery defendants' delay in seeking arbitration and their proffered explanations for it—the court's delay in ruling on their demurrers and counsel's representation concerning the surgery center defendants' lack of awareness of the agreements—patently unreasonable, seemingly designed to take advantage of both the judicial forum when convenient and the arbitral forum once it appeared that litigation could be protracted. (See *Guess?, Inc. v. Superior Court, supra,* 79 Cal.App.4th at p. 558 [four-month delay in seeking arbitration prejudicial when defendant answered complaint, responded to discovery, participated in depositions and filed an unsuccessful motion to stay action; "'"[t]he courtroom may not be used as a convenient vestibule to the arbitration hall so as to allow a party to create his own unique structure combining litigation and arbitration"'"].) As a result, it impliedly found, the Walker plaintiffs lost more than simply time and the expenses and fees incurred in the litigation; they lost the inherent advantages of the efficiencies of arbitration. (See *Burton v. Cruise, supra,* 190 Cal.App.4th at p. 949 ["substantial evidence supports the trial court's implicit determination that granting Burton's belated arbitration request deprived Cruise of the benefits available through arbitration, including a speedy resolution of the dispute"];

10

*Lewis v. Fletcher Jones Motor Cars, Inc., supra,* 205 Cal.App.4th 436, 449-453 [defendant's filing of demurrers and motions to strike and participation in discovery without raising its right to arbitrate resulted in prejudicial delay and waiver of arbitration right].)

The analysis in *Groom v. Health Net* (2000) 82 Cal.App.4th 1189, on which the surgery center defendants rely, does not compel a different result. In *Groom* the defendant (Health Net) filed a series of demurrers to the original and amended complaints and served the plaintiff (Groom) with form and special interrogatories, requests for admission and requests for production of documents. Eleven months after Health Net had been served with the original complaint, it petitioned to compel arbitration. The trial court denied the petition on the ground Health Net had waived arbitration. Our colleagues in Division Four of this court reversed, concluding there was no substantial evidence Groom had suffered any prejudice as a result of the delay in seeking arbitration. (*Id.* at p. 1196.) In reaching this conclusion Division Four found it significant that no responses to the written discovery requests had been made, no depositions had been taken and no motions had been filed. (*Ibid.*) The court was not persuaded by Groom's argument that filing demurrers, a process unavailable in arbitration, had forced her to articulate in detail the legal theories underlying her causes of action: "This analogy is not persuasive. One can learn far more about an opponent's case through discovery than through demurrer. That is one of the reasons discovery procedures exist. [Citations.] In all the cases relied upon by Groom, prejudice was shown by the fact that by engaging in *discovery,* the defendant learned all the details of the plaintiff's case before demanding arbitration." (*Ibid.*; accord, *St. Agnes, supra,* 31 Cal.4th at p. 1204 [insufficient evidence of waiver when the parties had not litigated the merits of the case and no discovery of the claims had occurred].) Here, in contrast, the surgery center defendants engaged in the very kind of extensive discovery and motion practice the court in *Groom* found lacking.

Similarly inapposite is our decision in *Roman v. Superior Court, supra,* 172 Cal.App.4th 1462, in which we upheld the trial court's implied finding that the defendants' participation in litigation had not resulted in a waiver. Unlike the instant

11

matter, the petition to compel arbitration in *Roman* was filed a mere two months after the complaint; and "[a]t the time, no substantive discovery responses had been served by either side and no formal hearings had taken place on the discovery issues." (*Id.* at p. 1479.) To be sure, in confronting the far different procedural posture presented by that case, we observed in *Roman* the limited discovery that had been served (a single set of form interrogatories and a single request for production of documents) was authorized under the rules applicable to the arbitration. (*Ibid.*) While the far more extensive discovery already accomplished in this case may also have been available in the arbitral forum, that is but one factor for consideration in the waiver analysis and, under our deferential standard of review, does not alone necessarily outweigh the other, substantial evidence in support of the trial court's waiver finding. (See *Lewis v. Fletcher Jones Motor Cars, Inc., supra,* 205 Cal.App.4th at pp. 449-453.)

In sum, because the record here does not require a finding of no waiver as a matter of law (*St. Agnes, supra,* 31 Cal.4th at p. 1196; *Lewis v. Fletcher Jones Motor Cars, Inc., supra,* 205 Cal.App.4th at p. 453), we affirm the trial court's ruling.

## DISPOSITION

The order denying the petition to compel arbitration is affirmed. The Walker plaintiffs are to recover their costs on appeal.


PERLUSS, P. J.

We concur:


WOODS, J.


ZELON, J.

12