Filed 11/27/23  Oppenheimer v. Centinela Storage Associates CA2/8

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION EIGHT

|  |  |
|---|---|
| STEVEN OPPENHEIMER et al., | B321544 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. 19STCV24447) |
| v. | |
| CENTINELA STORAGE ASSOCIATES, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Deirdre Hill, Judge.  Affirmed.

ClintonBailey, Mark C. Bailey; Schumann Arevalo, Eric Arevalo, Kimberly Hisa; Law Offices of Kathryn M. Davis and Kathryn M. Davis for Defendant and Appellant.

Lynberg & Watkins, Michael J. Larin; Dordick Law Corporation, Gary A. Dordick and Robert B. Reagan for Plaintiffs and Respondents.

———————————

Shortly before trial, Centinela Storage Associates (CSA) unsuccessfully petitioned the trial court to compel arbitration. We affirm the court's order. We also deny pending motions to dismiss and to impose sanctions.

## FACTUAL AND PROCEDURAL BACKGROUND

In October 2018, Steven Oppenheimer entered into a contract to rent a storage unit from Public Storage, Inc. The rental contract contained an arbitration provision. Weeks later, Oppenheimer's minor child Avery was injured at the facility in a collision with a motorized cart alleged to have been operated by a Public Storage employee.

In July 2019, Oppenheimer, his wife Shelice, and his three children sued Public Storage, Inc. and its employee (collectively, Public Storage), and Does 1-10. In December 2019, the Oppenheimers identified Doe No. 1 as CSA, the owner of the property on which the storage facility is located.

Although CSA had not yet appeared in the litigation, it engaged in discovery in cooperation with the Oppenheimers. At CSA's request, Avery Oppenheimer underwent a neuropsychological evaluation in January 2020 and a neurosurgeon's evaluation in February 2020. CSA agreed to permit the Oppenheimers access to the storage facility and to test the motorized cart involved in the underlying incident. The parties agreed these events qualified as if they had been requested under the Code of Civil Procedure.

In their first amended complaint, filed July 14, 2020, the Oppenheimers alleged causes of action for negligence and premises liability. CSA was served with the Oppenheimers' first

2

amended complaint on August 20, 2020. CSA filed an answer and a cross-complaint against Steven and Shelice Oppenheimer.

CSA responded in October 2020 to written discovery requests propounded by the Oppenheimers. CSA had to investigate to provide discovery responses.

On January 15, 2021, CSA filed a first amended answer to the first amended complaint. In the first amended answer, CSA relied on the contract in six different affirmative defenses. On information and belief, CSA asserted the contract released it from liability: "Plaintiffs entered into an agreement with Defendants and/or other parties in which Plaintiffs assumed responsibility and released Defendants and/or other parties from liability for all claims of injuries that could occur arising out of Plaintiffs' use of the subject property." CSA alleged the Oppenheimers had waived their claims when they entered into the contract, under which they "assumed responsibility for all claims of injuries that could occur arising out of Plaintiffs' use of the subject property." CSA alleged the Oppenheimers' damages were limited because the contract "limits recovery of said alleged injuries, damages, and losses (if any)." The contract was also the basis for affirmative defenses of ratification, consent, and assumption of the risk.

In 2021 the Oppenheimers answered the cross-complaint. The parties participated in two unsuccessful mediations. CSA filed a first amended cross-complaint adding causes of action against Public Storage. The first amended cross-complaint was later stricken because it was filed without leave. Public Storage moved to compel arbitration on CSA's cross-claims; this was denied as moot when CSA's first amended cross-complaint was stricken.

On August 31, 2021, the Oppenheimers filed a motion seeking trial preference under Code of Civil Procedure section 36 due to the ages of the minor plaintiffs. CSA opposed the motion for trial preference. While the motion for preference was pending, CSA sought leave to file its first amended cross-complaint, which the Oppenheimers opposed.

The trial court granted the motion for trial preference on April 5, 2022. The court set the trial for August 1, 2022, with a discovery cut-off of July 5, 2022.

CSA did not propound written discovery to the Plaintiffs until March 2022. Between March 2022 and May 2022, CSA propounded a total of 26 sets of form interrogatories, special interrogatories, and document production requests to the five plaintiffs. In May 2022, CSA filed an ex parte application and a motion to compel a person most qualified deposition. Also in May 2022, during a meet and confer session concerning the scheduling of depositions, CSA's counsel complained to the Oppenheimers' counsel that she lacked sufficient time to do all the work she needed to do. The Oppenheimers' counsel observed that CSA should have begun discovery earlier, and CSA's counsel responded that she had been told not to do anything earlier.

As of June 2022, the Oppenheimers had retained 11 experts, produced 2460 pages of documentation, and taken and attended depositions.

CSA deposed Public Storage Inc's person most qualified on May 27, 2022. That day, CSA's attorney received a copy of the rental contract for the Oppenheimers' storage unit.

Less than two months before trial, on June 9, 2022,[1] CSA moved to compel the Oppenheimers to arbitrate the causes of action against it and to stay proceedings pending completion of arbitration. CSA also applied ex parte for the court to either continue the trial date or to advance the hearing and shorten notice on a discovery matter and on the pending motion to compel arbitration.

The court denied CSA's motion to compel arbitration on June 29, 2022. The trial court found there was no arbitration agreement between the Oppenheimers and CSA and the arbitration provision did not cover personal injury claims. Finally, the court found that even if CSA could enforce the arbitration provision in the rental contract and the provision covered the claims asserted in the lawsuit, CSA had waived its right to arbitration by engaging in acts inconsistent with that purported right, to the prejudice of the Oppenheimers.

CSA appealed the denial of its motion to compel arbitration, staying the pending trial.

## DISCUSSION

I.  **Motion to Compel Arbitration**

An order denying a petition to compel contractual arbitration is appealable. (Code Civ. Proc., § 1294, subd. (a); *Mercury Ins. Group v. Superior Court* (1998) 19 Cal.4th 332, 349.) CSA argues each finding of the trial court was incorrect and asserts 1) it is entitled to invoke the applicability of the

---

[1]  CSA states their motion to compel arbitration was filed June 2, 2022. The copy of the motion in the Appellant's Appendix lacks a file stamp, but both the docket and the court's ruling on the motion state it was filed June 9, 2022.

arbitration provision, 2) the arbitration clause covers personal injury claims, and 3) CSA did not waive the right to arbitrate.

We examine the trial court's ruling that CSA waived its right to compel arbitration under the substantial evidence standard of review. (*St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1196 (*St. Agnes*).) Unless the facts are undisputed, not the case here, "the determination of waiver is a question of fact, and the trial court's finding, if supported by sufficient evidence, is binding on the appellate court." (*Ibid*.) "The appellate court may not reverse the trial court's finding of waiver unless the record as a matter of law compels finding nonwaiver." (*Kokubu v. Sudo* (2022) 76 Cal.App.5th 1074, 1083 (*Kokubu*).)

We conclude that even if CSA were entitled to invoke the arbitration provisions of the storage unit contract and the claims in this action were within the scope of the arbitration provision, the trial court did not err when it concluded CSA had waived its right to arbitration.

Code of Civil Procedure section 1281.2 provides in relevant part: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party thereto refuses to arbitrate such controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner." (Code Civ. Proc., § 1281.2.) The California Supreme Court has held that "no single test delineates the nature of the conduct that will constitute a waiver of arbitration. [Citations.] ' "In the past, California courts have found a waiver of the right

6

to demand arbitration in a variety of contexts, ranging from situations in which the party seeking to compel arbitration has previously taken steps inconsistent with an intent to invoke arbitration [citations] to instances in which the petitioning party has unreasonably delayed in undertaking the procedure." ' " (*St. Agnes*, *supra*, 31 Cal.4th at pp. 1195–1196.)

In *St. Agnes*, the Supreme Court identified factors relevant to the determination of a waiver claim: " 'In determining waiver, a court can consider "(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether 'the litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party." ' " (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196.)

Based on the *St. Agnes* factors, CSA argues the finding it waived any right to arbitrate the dispute is legally erroneous because the Oppenheimers did not provide "proof of actual knowledge" of the right to arbitrate. *St. Agnes* does not stand for the proposition that proof of actual knowledge of the right to arbitrate is required to establish waiver. To the contrary, in *St. Agnes*, the Supreme Court explained, "While 'waiver' generally denotes the voluntary relinquishment of a known right, it can also refer to the loss of a right as a result of a party's failure to

7

perform an act it is required to perform, regardless of the party's intent to relinquish the right. [Citations.] In the arbitration context, '[t]he term "waiver" has also been used as a shorthand statement for the conclusion that a contractual right to arbitration has been lost.' " (*St. Agnes*, *supra*, 31 Cal.4th at p. 1195, fn. 4.)

The trial court found, "CSA's actions are inconsistent with the right to arbitrate, and CSA delayed for a long period of time before seeking a stay and requesting arbitration. CSA filed a cross-complaint and have participated in discovery." These findings are supported by substantial evidence.

CSA has been claiming it is shielded from liability by the contract since early in this action. In January 2021, CSA filed a first amended answer to the first amended complaint in which the existence of an agreement between the defendants and the Oppenheimers was alleged as the basis for six different affirmative defenses. CSA repeatedly asserted on information and belief that "Plaintiffs entered into an agreement with Defendants and/or other parties in which Plaintiffs assumed responsibility for all claims of injuries that could occur arising out of Plaintiffs' use of the subject property." Accordingly, it argued the affirmative defenses of waiver, release, limitation of liability, consent, ratification, and assumption of the risk based on that agreement. Given CSA's awareness that a contract existed and its claim that the contract protected it from liability, inexplicably failing to examine that contract until trial was imminent may reasonably be considered inconsistent with the right to arbitrate and certainly created a substantial delay in

8

seeking to assert that right.[2]  CSA's request to compel arbitration, presented less than two months before trial, was unquestionably presented close to the trial date.  (See *St. Agnes*, *supra*, 31 Cal.4th at p. 1196; *Davis v. Sheik Shoes, LLC* (2022) 84 Cal.App.5th 956, 969 [courts have found the absence of a reasonable explanation for delay a significant factor weighing in favor of finding waiver].)

There is also substantial evidence that the litigation machinery had been substantially invoked and the parties were well into the lawsuit and preparation for trial by the time CSA sought to compel arbitration.  (See *St. Agnes*, *supra*, 31 Cal.4th at p. 1196.)  Long before CSA formally appeared in the litigation, by early 2020 it had already made agreements about discovery with the Oppenheimers and successfully requested multiple examinations of Avery Oppenheimer, all of which CSA and the Oppenheimers agreed would be treated by the parties as if they had been requested pursuant to the Code of Civil Procedure. Additionally, CSA filed a cross-complaint against the Oppenheimers without seeking a stay of proceedings, and it engaged in extensive discovery and motion practice.  CSA distinguishes between its litigation conduct on the Oppenheimers' claims and its litigation with Public Storage, and

---

[2]     We are aware that the parties dispute when CSA became aware of the arbitration provision in the rental contract.  CSA denies it knew of its right to compel arbitration until May 27, 2022, based on its counsel's highly specific declaration that he had not "not been made aware that [the contract] contained an arbitration clause."  The Oppenheimers observe that one attorney not having been made aware that a contract contained a particular clause does not establish a lack of knowledge on the part of the client.  We need not resolve this dispute.

it urges against considering several of its actions to be an invocation of litigation, but ultimately it argues that its litigation activity did not constitute waiver because "there is no evidence [it] engaged in aggressive litigation tactics designed to obtain an unfair advantage over Respondents or block their litigation/discovery efforts," and "there is no evidence that CSA had the arbitration agreement for a very long time, withheld it, and chose instead to actively litigate to Respondents' detriment." (Italics and boldface omitted.)  Whatever the factual merits of these assertions, neither engaging in aggressive litigation designed to obtain an unfair advantage nor knowingly withholding an arbitration agreement and choosing to actively litigate to another party's detriment is a requirement under *St. Agnes* for finding a party waived its right to arbitrate.

Finally, the court found the Oppenheimers were prejudiced by the delay in petitioning to compel arbitration.  Whether prejudice is a part of the waiver analysis is not fully resolved at this point.  In *St. Agnes*, the California Supreme Court noted that the " 'presence or absence of prejudice from the litigation of the dispute is the determinative issue under federal law,' " and stated that "[i]n California, whether or not litigation results in prejudice also is critical in waiver determinations," although it also noted that no individual factor was dispositive.  (*St. Agnes*, *supra*, 31 Cal.4th at p. 1203.)  However, the United States Supreme Court has recently declared prejudice is not to be considered in determining waiver under federal law.  (*Morgan v. Sundance, Inc.* (2022) 596 U.S. 411.)  The role of prejudice in the waiver analysis under California law is pending before the California Supreme Court in *Quach v. California Commerce Club, Inc.*

10

(2022) 78 Cal.App.5th 470, review granted August 24, 2022, S275121.

We conclude that whether or not a showing of prejudice remains part of the waiver analysis, the court's decision must be affirmed.  If prejudice is no longer required, even if the trial court may have improperly conditioned its waiver determination in part on a showing of prejudice, its decision may still be affirmed so long as any other correct legal reason exists to sustain it.  (See *D'Amico v. Board of Medical Examiners* (1974) 11 Cal.3d 1, 18–19 [" 'No rule of decision is better or more firmly established by authority, nor one resting upon a sounder basis of reason and propriety, than that a ruling or decision, itself correct in law, will not be disturbed on appeal merely because given for a wrong reason.  If right upon any theory of the law applicable to the case, it must be sustained' "]; *Rappleyea v. Campbell* (1994) 8 Cal.4th 975, 981 ["we cannot undo the effect of the ruling . . . as long as any other correct legal reason exists to sustain" it].)  As noted above, substantial evidence supports the court's findings on multiple *St. Agnes* factors regardless of the question of prejudice.  And if prejudice is still required, substantial evidence supports the court's determination that the Oppenheimers would be prejudiced by compelling arbitration just a few weeks before trial.

While "merely participating in litigation, by itself, does not result in a waiver," waiver is found when a party's conduct substantially undermines the strong " ' "public policy in favor of arbitration as a speedy and relatively inexpensive means of dispute resolution" ' " or "substantially impair[s] the other side's ability to take advantage of the benefits and efficiencies of arbitration."  (*St. Agnes*, *supra*, 31 Cal.4th at pp. 1203–1204.)  A " 'petitioning party's conduct in stretching out the litigation

11

process itself may cause prejudice by depriving the other party of the advantages of arbitration as an "expedient, efficient and cost-effective method to resolve disputes." [Citation.] Arbitration loses much, if not all, of its value if undue time and money is lost in the litigation process preceding a last-minute petition to compel.' " (*Kokubu, supra*, 76 Cal.App.5th at pp. 1090–1091.) This is all the more true where, as here, the Oppenheimers had demonstrated the intent to move the litigation along as quickly as possible, seeking and obtaining a preferential trial date pursuant to Code of Civil Procedure section 36 due to the ages of the minor plaintiffs. CSA, on the other hand, opposed the request for a preferential trial date and fully litigated the matter to the point of trial before seeking arbitration, engaging a full range of pre-trial litigation that would have been unnecessary if CSA had timely requested arbitration, and causing the Oppenheimers to lose the time and money savings offered by arbitration.

It is true, as CSA argues, that invoking arbitration always means the loss of a trial date, but that does not support CSA's conclusion that the loss of a preferential trial date can never constitute prejudice. The trial court could reasonably have concluded the Oppenheimers were prejudiced by the last-minute assertion of the right to arbitration on the verge of trial after years of pretrial litigation. As the record does not as a matter of law compel finding nonwaiver, the trial court's finding of waiver must be affirmed. (*Kokubu, supra*, 76 Cal.App.5th at p. 1083.)

12

## II.	**Motions to Dismiss and for Sanctions**

On July 20, 2022, the Oppenheimers filed motions to dismiss the appeal and to impose sanctions, and on February 9, 2023 they filed another motion for sanctions with their respondents' brief.  In all the motions the Oppenheimers argued CSA's appeal was meritless and objectively frivolous, and filed for purposes of delay.  (See *In re Marriage of Flaherty* (1982) 31 Cal.3d 637, 650 ["[A]n appeal should be held to be frivolous only when it is prosecuted for an improper motive—to harass the respondent or delay the effect of an adverse judgment—or when it indisputably has no merit—when any reasonable attorney would agree that the appeal is totally and completely without merit"]; *Zimmerman v. Drexel Burnham Lambert, Inc.* (1988) 205 Cal.App.3d 153, 161 ["Appellate courts have an inherent power to summarily dismiss any appeal which is designed for delay or which is based on sham or frivolous grounds.  Appropriate sanctions may be imposed on the parties or their attorneys"].)  Although CSA does not prevail on its arguments on appeal, we will not go so far as to declare that its appeal indisputably has no merit or that it was prosecuted for an improper motive.  Accordingly, we deny the Oppenheimers' motions to dismiss and for the imposition of sanctions.

## DISPOSITION

The order is affirmed.  Respondents shall recover their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


STRATTON, P. J.

We concur:


GRIMES, J.


VIRAMONTES, J.

14