Filed 12/21/23  Garcia v. Omni Hotels Management Corp. CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| ISMAEL GARCIA,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>OMNI HOTELS MANAGEMENT CORPORATION,<br><br>Defendant and Appellant. | D081228<br><br><br>(Super. Ct. No. 37-2019-00068188-CU-OE-CTL) |

APPEAL from an order of the Superior Court of San Diego County, Eddie C. Sturgeon, Judge.  Reversed and remanded.

Hirschfeld Kraemer, Reed E. Schaper, Ferry E. Lopez, and Felicia R. Reid for Defendant and Appellant.

Sullivan & Yaeckel Law Group, William B. Sullivan, Erick K. Yaeckel, and Ryan T. Kuhn for Plaintiff and Respondent.

Omni Hotels Management Corp. (Omni) appeals the denial of its motion to compel arbitration of the claims brought against it in late 2019 by its former employee, Ismael Garcia (Garcia), under the Private Attorneys General Act of 2004 (PAGA) (Lab. Code, § 2698 et seq.).[1] Omni did not file its motion to compel arbitration until 2022, after the United States Supreme Court clarified that some PAGA claims might be compelled to arbitration. The trial court found that Omni waived its right to seek enforcement of its arbitration agreement by failing to raise the issue earlier.

On appeal, we conclude that when a motion to compel arbitration had no realistic chance of success until after a change in the law, litigating the case in court up to that point did not waive the right to compel arbitration. As we explain, modification of the legal rule concerning arbitration of PAGA claims constituted good cause for Omni's failure to bring its motion to compel arbitration sooner, and the undisputed facts do not support a waiver finding. We therefore vacate the order denying Omni's motion to compel arbitration and remand for the trial court to address the remaining issues from that motion.[2]

---

[1] All further statutory references are to the Labor Code unless otherwise indicated.

[2] Omni asks us to take judicial notice of the docket and certain documents filed in a related action, *Martinez, Trumpe, et al. v. Omni Hotels Management Corp.* (Super. Ct. San Diego County, 2020, No. 37-2020-000222617-CU-OE-CTL), pending before the same superior court judge assigned to this action. Omni contends that, because the trial court granted Omni's motion to compel arbitration in that case, these documents establish that the superior court issued inconsistent orders. Because these records are not necessary to our conclusion, the request for judicial notice is denied.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *PAGA and the Federal Arbitration Act (FAA)*

California's Labor Code "contains a complex scheme for timely compensation of workers, deterrence of abusive employer practices, and enforcement of wage judgments." (*Voris v. Lampert* (2019) 7 Cal.5th 1141, 1157.)  This scheme includes the right of an "aggrieved employee" to seek civil penalties "on behalf of himself or herself and other current or former employees" under PAGA.  (§ 2699, subd. (g)(1).)  In an attempt to shield themselves from this exposure, employers added binding arbitration clauses to their labor contracts and included waivers extending to PAGA claims.  This practice spurred over a decade of litigation testing the interplay between the FAA (9 U.S.C. § 1 et seq.) and PAGA.

We start by reviewing two key cases in this series.  In 2014, the California Supreme Court held that "an employee's right to bring a PAGA action is unwaivable." (*Iskanian v. CLS Transportation Los Angeles, LLC* (2014) 59 Cal.4th 348, 383 (*Iskanian*).)  The court also found that arbitrating individual PAGA claims—which the disputed labor agreement allowed— would "not serve the purpose of the PAGA." (*Id.* at p. 384.)  " '[A]ssuming [individual PAGA claims are] authorized, a single-claimant arbitration under the PAGA for individual penalties will not result in the penalties contemplated under the PAGA to punish and deter employer practices that violate the rights of numerous employees under the Labor Code.' " (*Iskanian,* at p. 384.)  "Appellate courts interpreted this aspect of *Iskanian* 'as prohibiting splitting PAGA claims into individual and nonindividual components to permit arbitration of the individual claims.' " (*Nickson v. Shemran, Inc.* (2023) 90 Cal.App.5th 121, 128 (*Nickson*), quoting *Lewis v. Simplified Labor Staffing Solutions, Inc.* (2022) 85 Cal.App.5th 983, 993.)

3

Following *Iskanian*, no PAGA claims—individual or representative—could be compelled to arbitration because of pre-dispute agreements. (See *Viking River Cruises, Inc. v. Moriana* (2022) 596 U.S. 639, 648 [142 S.Ct. 1906, 1916] (*Viking River*) [trial court's ruling that "categorical waivers of PAGA standing are contrary to state policy and that PAGA claims cannot be split into arbitrable individual claims and non-arbitrable 'representative' claims. . . . was dictated by the California Supreme Court's decision in *Iskanian*"].)

Eight years later, the United States Supreme Court overruled part of *Iskanian*, holding in *Viking River* that the FAA preempts *Iskanian*'s "prohibition on contractual division of PAGA actions into constituent claims . . . ." (*Viking River, supra*, 596 U.S. at p. 659.) The court decided that contrary to *Iskanian*, the FAA preempts any rule disallowing the separation of PAGA claims into individual and representative categories. Further, *Viking River* held that the FAA controlled a plaintiff's individual PAGA claim. (*Id.* at p. 662.) At the same time, however, *Iskanian*'s prohibition against pre-dispute class or representative case waivers survived. (*Viking River, supra*, at pp. 662–663.)

B.    *Procedural History*

In 2014, Omni hired Garcia as an "On-Call Banquet Bartender" at its San Diego hotel. It contends that Garcia signed an "Amended and Restated Alternative Dispute Resolution Program for California" agreement and a "Receipt of Arbitration Program and Acknowledgment" form as part of his hiring process. Omni asserts these documents require Garcia to arbitrate his PAGA claims.

In December 2019, during a period when *Iskanian* appeared to control PAGA actions, Garcia filed a PAGA case against Omni. He alleged various California Labor Code violations and sought civil penalties. Garcia asserted

4

his claims "in a representative capacity on behalf of all current and former aggrieved [Omni] employees." Omni did not raise the arbitration agreement as an affirmative defense and did not seek to compel arbitration. The parties characterize the litigation history differently, but agree they engaged in the discovery process, that Garcia filed (and Omni opposed) multiple motions to compel discovery, and that in December 2021 they participated in an unsuccessful mediation. In January 2022, the parties exchanged correspondence regarding discovery issues, including the preparation and issuance of a *Belaire-West* notice to affected Omni employees.[3]

But, on December 15, 2021, the United States Supreme Court granted certiorari in *Viking River*.[4] On January 20, 2022, Omni notified Garcia of its intent to seek a stay pending the resolution of *Viking River*. Six days later, Omni filed a motion asking the superior court to "stay [the] action until 30 days after [the United States Supreme Court] . . . issues a decision in *Viking River*." The court granted the stay, setting a status conference for July 29, 2022.

At the July 29th conference, and in light of the Supreme Court's then-recent decision in *Viking River*, the court and parties discussed "the status of the case and a filing of a Motion to Compel Arbitration." Following the conference, the court vacated the September trial date, entering a deadline for Omni to file its motion to compel. Omni timely filed its motion. Garcia opposed the motion arguing, among other things, that Omni waived

---

[3]     *Belaire-West* notices provide employees notice of representative PAGA actions, affording employees an opportunity to opt out of disclosing personal contact information to PAGA plaintiffs. (See *Williams v. Superior Court* (2017) 3 Cal.5th 531, 553.)

[4]     *Viking River Cruises, Inc. v. Moriana (2021) 142 S.Ct. 734, cert. granted,* 596 U.S. 639 [142 S.Ct. 1906].

the right to seek arbitration both by failing to plead the arbitration agreement as an affirmative defense and by delaying its request to compel arbitration.

The trial court found Omni waived its right to seek arbitration because (a) "approximately 1040 days [had]passed since the filing of the lawsuit"; (b) the change in law provided no excuse for delay because *Viking River* itself demonstrated that an employer could successfully enforce its arbitration rights; (c) Omni failed to raise arbitration as an affirmative defense; (d) "the extensive discovery motion practice that occurred in 2020 and of the other actions taken by both parties in prosecuting and defending this action, including participating in class-wide mediation" were " 'inconsistent with the right to arbitrate' "; (e) " 'the litigation machinery' ha[d] been substantially invoked" by Omni; and (f) "ordering arbitration at this late stage would prejudice [Garcia,] who has already incurred expenses associated with the litigation and mediation." Omni appealed.

## DISCUSSION

In finding that Omni waived its right to arbitrate this dispute, the trial court focused on the duration of Garcia's lawsuit to date and Omni's pre-*Viking River* litigation conduct. In contrast, we conclude that *Viking River* significantly changed the legal landscape in which Omni and Garcia found themselves. Because Omni moved quickly to compel arbitration once the Supreme Court decided *Viking River* and we do not see any other significant circumstances that require a different result, we hold that Omni did not waive its right to arbitrate.

6

A.    *Applicable Law and the Standard of Review*

The parties dispute the applicable law (state or federal) determining our standard of review (de novo or substantial evidence).  There is ambiguity as to whether state or federal law governs the waiver analysis for an arbitration agreement subject to the FAA.  (See, e.g., *Morgan v. Sundance, Inc.* (2022) 596 U.S. 411, 416 [142 S.Ct. 1708, 1712] (*Morgan*) ["[T]he parties have disagreed about the role state law might play in resolving when a party's litigation conduct results in the loss of a contractual right to arbitrate."].)  Indeed, although Omni argues that federal law applies, in the superior court Omni principally cited California authority.  Garcia does not dispute that the FAA applies but relies exclusively on California law.

We need not resolve which law applies since under either federal or state authority our conclusion is the same:  Omni's right to arbitration remains viable.  (See, e.g., *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187, 1194–97 (*St. Agnes*) [explaining that state and federal waiver rules are "very similar"].)  Moreover, even when federal substantive law applies, we generally look to state law for our standard of review.  (See *Colombo v. BRP US Inc.* (2014) 230 Cal.App.4th 1442, 1458 [applying state law standard of review to federal common law issue], citing *Schlessinger v. Holland America* (2004) 120 Cal.App.4th 552, 558, fn. 3 [state law controls on "practice and procedure," including "rules defining the standard of appellate review"].)  Under California law, "the determination of waiver is a question of fact, and the trial court's finding, if supported by sufficient evidence, is binding on the appellate court." (*St. Agnes*, at p. 1196.)  But "[w]hen . . . the facts are undisputed and only one inference may reasonably be drawn, the issue is one of law and the reviewing court is not

bound by the trial court's ruling." (*Platt Pacific, Inc. v. Andelson* (1993) 6 Cal.4th 307, 319.)

B. *General Principles of Waiver as Applied to Arbitration of PAGA Claims*

Code of Civil Procedure section 1281.2 provides that a court can deny a petition to compel arbitration if "[t]he right to compel arbitration has been waived by the petitioner." (See, e.g., *St. Agnes*, *supra*, 31 Cal.4th at pp. 1194–1196.) In an arbitration context " 'waiver' has a number of meanings in statute and case law," including "as a shorthand statement for the conclusion that a contractual right to arbitration has been lost." (*Id.* at p. 1195, fn. 4.) "[N]o single test delineates the nature of the conduct that will constitute a waiver of arbitration." (*Id.* at p. 1195.) However, six discretionary factors help guide this particular "waiver" inquiry:

> " '(1) whether the party's actions are inconsistent with the right to arbitrate; (2) whether "the litigation machinery has been substantially invoked" and the parties "were well into preparation of a lawsuit" before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) "whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place"; and (6) whether the delay "affected, misled, or prejudiced" the opposing party.' " (*St. Agnes*, *supra*, 31 Cal.4th at p. 1196, quoting *Sobremonte v. Superior Court* (1998) 61 Cal.App.4th 980, 992 (*Sobremonte*), quoting *Peterson v. Shearson/American Express*, Inc. (10th Cir.1988) 849 F.2d 464, 467–468.)

Generally, if a motion to compel arbitration lacked a realistic chance of success when a lawsuit was filed, a change in law may constitute good cause for failure to earlier raise the defense. (See *Iskanian*, *supra*, 59 Cal.4th at

8

p. 376 ["This case is therefore distinguishable from cases finding unexcused delay where the [asserting party] had a real chance of succeeding in compelling individual arbitration under extant law"], overruled on other grounds in *Viking River, supra,* 596 U.S. 639.) Because Omni contends that a change in the law excused its failure to file a motion to compel arbitration sooner, a closer examination of *Iskanian* is instructive.

The employee in *Iskanian* filed his PAGA and class action claims in 2006; the employer responded with a successful motion to compel arbitration. (*Iskanian*, *supra*, 59 Cal.4th at p. 361.) The appellate court vacated and remanded after considering *Gentry v. Superior Court* (2007) 42 Cal.4th 443, an intervening California Supreme Court decision holding that "class action waivers in employment arbitration agreements are invalid under certain circumstances." (*Iskanian*, at p. 361.) The employer withdrew its motion to compel, and the action proceeded in superior court for several years. (*Ibid.*) "The parties engaged in discovery," including class discovery, and litigated a class certification motion. (*Id.* at 375.) The superior court certified a class in October 2009. (*Ibid.*) Almost two years later, in May 2011, the United States Supreme Court issued an opinion casting doubt on *Gentry*. (*Iskanian*, at p. 375.) The employer then "renewed its petition to compel arbitration," which the trial court granted. (*Ibid.*) On appeal, the Supreme Court held that the employer had not waived its right to arbitrate. (*Id.* at p. 378.)

Although pending for five years by the time the renewed motion to compel was filed, our Supreme Court concluded that defendant's delay in pursuing arbitration was reasonable given the law change. (*Iskanian*, *supra*, 59 Cal.4th at pp. 376, 378.) The employee claimed, "because he spent three years attempting to obtain class certification, including considerable effort and expense on discovery, waiver should be found on the ground that the

9

delay in the start of arbitration prejudiced him." (*Id.* at p. 376.) The court disagreed, concluding the delay in seeking arbitration "was reasonable in light of the state of the law at the time and [the employee's] own opposition to arbitration." (*Id.* at p. 377.) The court further concluded that, "[b]ecause the arbitration agreement itself provides for 'reasonable discovery,' there [was] no indication that [the employer] obtained any material information through pretrial discovery that it could not have obtained through arbitral discovery." (*Id.* at p. 378.) The court thus held that there was no cognizable prejudice to the employee from pretrial court proceedings. (*Ibid.*)

More recently, two courts of appeal addressed facts nearly identical to those before us. Both decisions held that the change in the law brought about by *Viking River* constituted good cause for delay in moving to compel arbitration.

In *Piplack v. In-N-Out Burgers* (2023) 88 Cal.App.5th 1281, (*Piplack*) involved an employee claim against a fast-food restaurant company. In late 2019, employees filed their PAGA lawsuit. (*Id.* at p. 1285.) The case proceeded normally in court "with the filing of answers, demurrers, amended complaints, and a discovery motion." (*Id.* at p. 1286.) In February 2022, the employer filed its motion to compel arbitration, explaining that the United States Supreme Court recently granted certiorari in *Viking River,* leading the company to believe the Supreme Court would reverse the *Iskanian* rule. (*Piplack,* at p. 1286.) The trial court summarily denied the employer's motion. Relying on *Iskanian*'s waiver analysis (which survived *Viking River*), *Piplack* explained that a PAGA defendant does not waive arbitration by vigorously defending itself in litigation "because the relevant question is whether there was any *unreasonable* delay" to enforcing an arbitration clause. (*Piplack,* at p. 1289.) In the court's view, failing to request

10

arbitration prior to *Viking River* was not unreasonable. *Piplack* held the employer "had not waived its right to arbitrate as a matter of law" because once *Viking River* was decided, the defendant "raised its right to arbitrate as soon as it had any chance of success." (*Piplack* at p. 1290.)

Relying on *Piplack*, the court in *Barrera v. Apple American Group LLC* (2023) 95 Cal.App.5th 63, 77–79 (*Barrera*) also held that no waiver occurred where the defendant acted promptly to secure its right to arbitration once the Supreme Court granted certiorari in *Viking River*. *Barrera* held that "[g]iven these circumstances, any delay in bringing their motion was not unreasonable. Defendants therefore did not waive their right to arbitrate as a matter of law." (*Id.* at p. 79.)[5]

C.  *Omni Did Not Waive Its Right to Compel Arbitration*

We come to the same conclusion in this matter as did the courts in *Piplack* and *Barrera*. We examine the waiver question by looking at three areas the trial court discussed: the change in law, litigation conduct, and prejudice to Garcia. We also consider whether the result would be different if we applied federal law rather than California law as to waiver.

1.  *Change in the Law*

We conclude that because Omni's motion to compel arbitration had no reasonable chance to succeed prior to the Supreme Court decision in *Viking River*; failure to bring that motion does not support finding an arbitration waiver.

The only claims asserted in this action are under PAGA. *Iskanian* held that an employment agreement "compel[ling] the waiver of representative

---

[5]  Because *Piplack* and *Barrera* were filed some months after its ruling in this case, we understand that the trial court did not have the benefit of reviewing those decisions.

11

claims under the PAGA . . . is contrary to public policy and unenforceable as a matter of state law." (*Iskanian*, *supra*, 59 Cal.4th at p. 384.) *Iskanian* also prohibited splitting PAGA actions and compelling only individual PAGA claims to arbitration. (See *Viking River*, *supra*, 596 U.S. at p. 648 [trial court's ruling that "categorical waivers of PAGA standing are contrary to state policy and that PAGA claims cannot be split into arbitrable individual claims and nonarbitrable 'representative' claims. . . . [¶] was dictated by the California Supreme Court's decision in *Iskania*."]; *Nickson*, *supra*, 90 Cal.App.5th at p.128 [*Iskanian*'s "rule and the logic behind it seemed sound—until *Viking River*."].)

Indeed, Garcia does not dispute that before *Viking River*, *Iskanian* foreclosed a successful motion to compel arbitration. Instead, he contends—as the trial court found—that *Viking River* itself demonstrates Omni could have filed a motion to compel arbitration, challenging the existing law all the way to the United States Supreme Court. But that would be true in nearly every instance in which there is a change in the law. The law's constant evolution demonstrates that in the right circumstances, today's futile motion at the trial level may be tomorrow's agent of change in the appellate courts. But that is not the standard by which we evaluate this matter. More importantly, perhaps, the California Supreme Court held that a change in the law can support finding good cause for delay in filing a motion to compel arbitration, and we are bound by that ruling. (See *Iskanian*, *supra*, 59 Cal.4th at p. 377; *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 ["The decisions of this court are binding upon and must be followed by all the state courts of California"].)

2.  *Litigation Conduct*

In finding Omni waived its right to arbitration, the trial court understandably commented on "the extensive discovery motion practice that occurred in 2020 and of the other actions taken by both parties in prosecuting and defending this action, including participating in class-wide mediation." And absent the change in the law effected by *Viking River,* this would be a significant and perhaps dispositive consideration. But the pre-*Viking River* litigation conduct here was not as significant as that in *Iskanian.* (*Iskanian, supra,* 59 Cal.4th at pp. 375, 378.) Indeed, in *Iskanian* the parties had completed class discovery and the court certified the class by the time the employer filed its motion to compel arbitration. (*Id.* at p. 375.) Although this lawsuit had been pending for several years, we cannot say that Omni's pre-*Viking River* actions waived the right to arbitrate considering the fact that it moved promptly once certiorari was granted to assert its arbitration rights.

The trial court here observed that, although "failure to plead an affirmative defense is not itself determinative," Omni "could have at least raised the affirmative defense but did not." " 'To properly invoke the right to arbitrate, a party must (1) timely raise the defense and take affirmative steps to implement the process, and (2) participate in conduct consistent with the intent to arbitrate the dispute. Both of these actions must be taken to secure for the participants the benefits of arbitration.' " (*Fleming Distribution Company v. Younan* (2020) 49 Cal.App.5th 73, 81, quoting *Sobremonte, supra,* 61 Cal.App.4th at pp. 997–998.) For purposes of waiver, Omni's failure to assert the arbitration provision as an affirmative defense yields to the same analysis as not bringing a motion to compel arbitration: Until *Viking River*, arbitration of PAGA claims could not be compelled, making assertion of this affirmative defense an exercise in futility.

13

Garcia contends there are disputed issues of fact concerning the conduct of the litigation that require us to defer to the trial court's order. We disagree. Although Garcia claims that Omni's appellate brief misrepresented the record in multiple ways, our review reveals only one example that might qualify as a distortion. Omni states "the only motions [it] filed in the Trial Court were to stay proceedings and compel arbitration." In fact, in its Supplemental Brief Regarding Scope of *Belaire-West* Notice, Omni also moved for "an order to sequence discovery." We find Omni's misstatement immaterial. Further, a request to sequence discovery does not bring the litigation activity in this matter to a level that distinguishes it from *Iskanian*.

The rest of Garcia's examples are either not misrepresentations or not supported by the record. For example, Garcia seeks to rebut Omni's contention that it "did not propound class discovery" By noting that "Omni served discovery on Plaintiff in October[ ] 2020 seeking (*inter alia*) documents and information related to Plaintiff's claims that Omni violated wage and hour laws." Omni does not dispute that it served discovery, only that it did not serve "class discovery." Garcia does not cite anything that contravenes Omni's actual argument. In any case, participating in "class" discovery would not change our analysis. (See *Iskanian*, *supra*, 59 Cal.4th at p. 375 [parties completed class discovery and a class had been certified before motion to compel was filed].)

Garcia also argues that "Omni itself requested class-wide mediation, and agreed to produce formal discovery and issue a *Belaire-West* Notice in the event of a failed mediation." Garcia's record citations do not support these assertions. Even assuming these statements are true, they do not help Garcia's position.

14

As to post-*Viking River* litigation conduct, the record does not reflect any unreasonable delay by Omni. Omni filed a motion to stay proceedings a little more than a month after certiorari was granted. The proposed motion to compel was discussed at the first post-stay status conference, with Omni filing its motion in accordance with court-imposed deadlines. Garcia contends that Omni did not "immediately" seek to enforce the arbitration agreement after the Supreme Court decided *Viking River*, contending that he "was required to force Omni to either (1) continue the litigation of the case, or (2) file its Motion to Compel Arbitration, at a July 29, 2022 status conference." In support, Garcia points to the superior court's Register of Actions and the minutes of the July 29, 2022 status conference—neither of which reflect that Garcia had to "force" Omni to bring its motion.

### 3. *Prejudice*

The trial court also found that "ordering arbitration at this late stage would prejudice [Garcia] who has already incurred expenses associated with the litigation and mediation." But *Iskanian* forecloses this conclusion.

In *Iskanian*, the employee contended "that because he spent three years attempting to obtain class certification, including considerable effort and expense on discovery, waiver should be found on the ground that the delay in the start of arbitration prejudiced him." (*Iskanian*, *supra*, 59 Cal.4th at p. 376.) The court rejected this argument because the delay and expense were not "caused by the *unreasonable or unjustified* conduct of the party seeking arbitration," but rather "the delay was reasonable in light of the state of the law at the time and [the employee's] own opposition to arbitration." (*Id.* at p. 377.) Here, too, the delay was reasonable given the state of the law before *Viking River*. (See *Iskanian* at p. 361 [litigation conducted for five years before motion to compel arbitration, including at least two years of

15

discovery and a class certification motion]; *Barrera*, *supra*, 95 Cal.App.5th at pp. 2–3 [litigation conducted for over two years, "with defendants filing a demurrer, plaintiffs serving discovery requests, and defendants responding to those requests"]; *Piplack*, *supra*, 88 Cal.App.5th at pp. 1285–1286 [litigation conducted for over two years "with the filing of answers, demurrers, amended complaints, and a discovery motion"].) We do not find prejudice based on unreasonable delay.

### 4.    *Federal Law as to Waiver*

As previously noted, there is some uncertainty as to whether state or federal law applies to the waiver analysis for arbitration agreements governed by the FAA. (See *Morgan*, *supra,* 596 U.S. at pp. 416–417 [reserving on disputed issues regarding the relevance of state law to waiver analysis].) As *Iskanian* involved an arbitration agreement under the FAA, we follow our Supreme Court's analysis.

In any case, relevant California law and federal law are the same. Under federal law, a party may "knowingly relinquish the right to arbitrate by acting inconsistently with that right." (*Morgan*, *supra*, 596 U.S. at p. 419.) "Where, as here, the concern is whether the undisputed facts of defendant's pretrial participation in the litigation satisfy the standard for waiver, the question of waiver of arbitration is one of law which [courts] review *de novo.*" (*Fisher v. A.G. Becker Paribas Inc.* (9th Cir. 1986) 791 F.2d 691, 693 (*Fisher*).)

The Ninth Circuit held that, if existing law would have precluded arbitration at the time a lawsuit is filed, waiting to file a motion to compel arbitration until after the law has changed is not inconsistent with the right to arbitrate. (*See Fisher*, *supra*, 791 F.2d at pp. 694–697; *Letizia v. Prudential Bache Securities, Inc.* (9th Cir. 1986) 802 F.2d 1185, 1187 [Although "defendants did not seek arbitration until after the close of

16

discovery, nine months after their answer was filed," "there was no existing right to arbitrate when this suit was filed," and "there could have been no waiver."].)  Federal courts cannot consider prejudice to the party resisting arbitration.  (*Morgan*, *supra*, 596 U.S. at p. 415.)  We therefore conclude that even under federal law our analysis and conclusions under state law would remain unchanged.

## DISPOSITION

In its minute order the trial court stated, "Because the motion is denied on [the basis of waiver], the court does not decide the remaining issues raised in the parties' papers."  Given our ruling, the October 28, 2022 order denying Omni's motion to compel arbitration is vacated, and the matter is remanded to the trial court to address the unresolved issues raised by the parties on the motion.


DATO, J.

WE CONCUR:


O'ROURKE, Acting P. J.


KELETY, J.

17