Filed 12/18/24  Incentax v. Gan CA4/3

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| INCENTAX, LLC, | |
| Plaintiff and Respondent, | G063917 |
| v. | (Super. Ct. No. CIVSB2210175) |
| GEOFFREY THOMAS GAN et al., | O P I N I O N |
| Defendants and Appellants. | |

Appeal from a judgment of the Superior Court of San Bernardino, Joseph T. Ortiz, Judge. Affirmed.

Hill, Farrer & Burrill, Clayton J. Hix, and Erika A. Silverman for Defendants and Appellants.

Umberg Zipser, Mark A. Finkelstein and Ethan Feng, for Plaintiff and Respondent.

Geoffrey Thomas Gan and his company GTG Consulting LLC (collectively "Appellants") appeal from a trial court's order denying their motion to compel respondent Incentax, LLC to arbitrate its claims against them. The trial court determined Gan had waived his contractual right to arbitration under the multifactor test set forth in *St. Agnes Med. Ctr. v. PacifiCare of California* (2003) 31 Cal.4th 1187 (*St. Agnes*). However, while this matter was pending on appeal, the California Supreme Court issued *Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562 (*Quach*), which abrogated "*St. Agnes*'s arbitration-specific prejudice rule." (*Id.,* at p. 583.) Under the new standard of review set forth in *Quach*, we conclude there is clear and convincing evidence to support the trial court's finding that Gan waived any right to arbitration. Accordingly, we affirm.

I

PROCEDURAL HISTORY

A. *Complaint, Answer, and Cross-Complaint*

On May 25, 2022, Incentax filed a complaint against appellants asserting numerous causes of actions arising from Gan's alleged misappropriation of Incentax's confidential information and trade secrets in violation of his contractual obligations under an "Admission Agreement" and an Employee Handbook. The complaint asserted a claim for breach of contract and breach of the duty of loyalty against Gan only, and asserted the remaining claims against Gan and GTG Consulting, LLC (GTG), which was formed in May 2022. Incentax sought damages and injunctive relief, and demanded a jury trial. The Admission Agreement and the Employee Handbook were not attached to the complaint.

On July 22, appellants filed an answer, generally denying the allegations and asserting 10 affirmative defenses. The last affirmative

2

defense was that based on information and belief, "the Complaint and each purported cause of action are barred by [Incentax's] agreement to arbitrate, which precludes this court from having jurisdiction over its claims."

The same day, Gan filed a cross-complaint against Incentax and Nojan Boloorchi, who allegedly owns Incentax through a trust and is the sole manager of Incentax. The cross-complaint sought damages for fraud and breach of contract based on Boloorchi's alleged fraudulent inducement of Gan to prematurely sell his membership interest in Incentax at a discount. The cross-complaint also asserted a claim for waiting time penalties under the Labor Code. Gan attached a written amendment to the Admission Agreement to the cross-complaint, but did not attach the Admission Agreement.

On September 13, Incentax and Boloorchi demurred to the cross-complaint. On November 3, the Court sustained in part and overruled in part the demurrer, and on November 23, Gan filed an amended cross-complaint.

During this time period, the parties also litigated over appellants' motion for a protective order.

B. *Gan's Motion to Compel Arbitration*

On September 21, 2023, Gan filed a motion to compel arbitration pursuant to: (1) the arbitration provision in the Admission Agreement; and (2) an arbitration agreement in an "Employee Acknowledgement and Agreement," attached to the Employee Handbook. Gan asserted the arbitration agreements were valid and all the causes of action in Incentax's complaint fell within the scope of the arbitration agreements. He further argued that GTG could invoke the arbitration provisions because the

3

arbitrable claims also were asserted against GTG and were based on the same facts as the claims against Gan.

In anticipation of Incentax's argument that Gan had waived the right to arbitration, Gan argued the "no waiver" provision in paragraph 21 of the Admission Agreement precludes any finding of waiver. Gan further argued that even in the absence of the "no waiver" provision, "Defendants did not engage in conduct that supports the finding of waiver." Gan claimed he timely filed the motion to compel arbitration because Incentax did not produce the Admission Agreement and the Employment Handbook until May 3, 2023, and they went unnoticed because they were part of a 2,504-page production. However, after Incentax attached the Admission Agreement to an August 30, 2023 motion for a preliminary injunction, Gan subsequently discovered the arbitration agreement on September 15, 2023, and began preparing the instant motion to compel arbitration. Gan also noted that no trial date has been set and no deposition has been taken.

In a supporting declaration, Gan stated he did not possess copies of the Admission Agreement or the Employee Handbook when his employment with Incentax was terminated in 2022. He stated, "The first time I saw them after being terminated in 2022 was this month, September of 2023. That was when I first understood that Plaintiff agreed to arbitrate any disputes between us."

The Employee Handbook was attached to the motion to compel arbitration. In the "Employee Acknowledgement and Agreement," the document provides, in relevant part: "I and the Company agree to utilize binding individual arbitration as the sole and exclusive means to resolve all disputes that may arise out of or be related in any way to my employment. I and the Company each specifically waive and relinquish our respective rights

4

to bring a claim against the other in a court of law and to have a trial by jury. Both I and the Company agree that any claim, dispute, and/or controversy that I may have against the Company (or its owners, directors, officers, managers, employees, or agents), or the Company may have against me, shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act ('FAA'), in conformity with the procedures of the California Arbitration Act [Code Civ. Proc., §] 1280 et seq., including section 1283.05 and all of the Act's other mandatory and permissive rights to discovery). . . . [¶] . . . I agree that any claims brought under this binding arbitration Agreement shall be brought in the individual capacity of myself or the Company." The document was not signed.

The Admission Agreement also was attached to the motion to compel arbitration. Paragraph 24 of the Arbitration Agreement provides:

"<u>Arbitration</u>. For all purposes, this Agreement shall be construed and enforced in accordance with the laws of the State of California. Any conflicts or claims between [Incentax] and [Gan], including those arising out of this Agreement, will be subject to confidential and binding arbitration before a retired judge or justice pursuant to the procedures set forth in the Operating Agreement."

In paragraph 21, the Admission Agreement provides: "<u>Amendment and Waiver</u>. The provisions of this Agreement may be amended or waived only with the prior written consent of [Incentax] and [Gan], and no course of conduct or course of dealing or failure or delay by any party hereto in enforcing or exercising any of the provisions of this Agreement . . . shall affect the validity, binding effect or enforceability of this Agreement or be deemed to be an implied waiver of any provision of this Agreement."

Incentax opposed Gan's motion to compel arbitration, arguing Gan waived his right to compel arbitration. Incentax noted that in *St. Agnes*, *supra*, 31 Cal.4th 1187, the California Supreme Court listed six factors a court should consider in determining whether a party waived its right to compel arbitration. The high court stated: "In determining waiver, a court can consider (1) "whether the party's actions are inconsistent with the right to arbitrate; (2) whether the 'litigation machinery has been substantially invoked' and the parties 'were well into preparation of a lawsuit' before the party notified the opposing party of an intent to arbitrate; (3) whether a party either requested arbitration enforcement close to the trial date or delayed for a long period before seeking a stay; (4) whether a defendant seeking arbitration filed a counterclaim without asking for a stay of the proceedings; (5) 'whether important intervening steps [e.g., taking advantage of judicial discovery procedures not available in arbitration] had taken place'; and (6) whether the delay 'affected, misled, or prejudiced' the opposing party.'" (*Id.* at p. 1196.) Incentax argued: (1) Gan acted inconsistently with the right to arbitrate by actively engaging in extensive litigation; (2) Gan substantially invoked the "litigation machinery" by filing a cross-complaint and propounding discovery; (3) Gan delayed filing the motion to compel discovery by 16 months since the complaint was filed and 14 months since the answer was filed; (4) Gan filed counter-claims without seeking a stay of proceedings; (5) Gan made use of discovery devices unavailable in arbitration; and (6) the delay significantly prejudiced Incentax.

Incentax also argued the "no waiver" provision in the Admission Agreement did not apply because the waiver at issue is not a waiver of a contractual provision, but a waiver of the statutory right to compel arbitration. It further contended Gan was in possession of all relevant

6

agreements, including the Admission Agreement, when he was terminated in May 2022.  It also argued GTG cannot assert a right to arbitration because it was not a party to any arbitration agreement, and the claims against GTG are separable from the claims against Gan.

In reply, Gan argued the six *St. Agnes* factors dictate a finding of no waiver because: (1) Gan moved to arbitrate as soon as he learned of the arbitration agreements; (2) the litigation machinery has not been substantially invoked because trial has not been set and the parties engaged in conduct that would have been allowed in arbitration; (3)  Gan did not move to compel arbitration close to the trial date because no trial date has been set; (4) Gan requested a stay of the proceedings immediately after learning of the arbitration agreements; (5) Gan did delay in compelling arbitration to take advantage of judicial procedures not available in arbitration because his litigating actions also would have occurred in arbitration; and (6) any delay is not prejudicial because no trial date has been set and any discovery also would have occurred in arbitration.

As to Incentax's argument that Gan was in possession of the relevant documents, Gan neither acknowledged nor denied he was in possession of the documents. Rather, he declared he was not aware the "documents that I signed during my employment with Incentax or that I possessed contained an arbitration provision until September 2023."

On November 3, 2023, the trial court denied Gan's motion to compel arbitration after finding Gan waived his right to compel arbitration. The court's waiver finding was based solely on Gan's litigation conduct and the prejudicial impact on Incentax resulting from Gan's delay in invoking the arbitration provisions. As to Gan's litigation conduct, the court noted: "Gan asserted arbitration as an affirmative defense at the onset of litigation with

7

his responsive pleading. It has been fourteen months since that assertion. Defendant Gan has, since that date, been actively litigating the matter, filing pleadings - such as various cross-complaints - and engaging in significant motion practice. In all, Defendant Gan has participated in seven court hearings and conferences, including two hearings on a motion for protective order, a demurrer, and an *ex parte* application to advance the hearing on Plaintiff's motion for preliminary injunction, plus three trial setting conferences; Defendant Gan requested a jury trial and posted fees; and he participated in extensive discovery, as well as receiving a protective order and exchanging more than 14,000 pages of documents. Further, Defendant Gan has never sought anything that could reasonably be construed as an attempt to preserve his right to arbitration, such as requesting a stay" (fn. omitted.)[1]

## II

### APPLICABLE LAW

Code of Civil Procedure section 1281.2 provides: "On petition of a party to an arbitration agreement alleging the existence of a written agreement to arbitrate a controversy and that a party to the agreement refuses to arbitrate that controversy, the court shall order the petitioner and the respondent to arbitrate the controversy if it determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner." In determining whether a petitioner waived the right to compel arbitration, California courts previously applied the *St. Agnes*'s multifactor test, which

---

[1] We grant Incentax's unopposed motion to augment the record to include court filings in which appellants requested a jury trial and posted jury fees.

8

included prejudice to the nonmoving party as one of the factors. However, in *Quach*, *supra*, 16 Cal.5th 562, the California Supreme Court abrogated that test. It held: "Courts should not apply the *St. Agnes* factors as a single multifactor test for determining whether the right to compel arbitration has been lost through litigation. [Citations.] Instead, a court should be careful to consider only those factors that are relevant to the specific state-law defense the party resisting arbitration has raised." (*Quach*, *supra*, 16 Cal.5th at p. 584.)

The *Quach* court then considered the defense of waiver, which is the defense at issue in this case. "To establish waiver under generally applicable contract law, the party opposing enforcement of a contractual agreement must prove by clear and convincing evidence that the waiving party knew of the contractual right and intentionally relinquished or abandoned it. [Citations.] Under the clear and convincing evidence standard, the proponent of a fact must show that it is 'highly probable' the fact is true. [Citation.] The waiving party's knowledge of the right may be 'actual or constructive.' [Citation.] Its intentional relinquishment or abandonment of the right may be proved by evidence of words expressing an intent to relinquish the right or of conduct that is so inconsistent with an intent to enforce the contractual right as to lead a reasonable fact finder to conclude that the party had abandoned it. [Citations.]" (*Quach*, *supra*, 16 Cal.5th at p. 584; see also *Morgan v. Sundance, Inc.* (2022) 596 U.S. 411, 419 [Under the Federal Arbitration Act, the relevant waiver inquiry is whether the petitioner "knowingly relinquish the right to arbitrate by acting inconsistently with that right"].)

"The waiver inquiry is exclusively focused on the waiving party's words or conduct; neither the effect of that conduct on the party seeking to

9

avoid enforcement of the contractual right nor that party's subjective evaluation of the waiving party's intent is relevant. [Citations.] This distinguishes waiver from the related defense of estoppel, 'which generally requires a showing that a party's words or acts have induced detrimental reliance by the opposing party.' [Citations.] To establish waiver, there is no requirement that the party opposing enforcement of the contractual right demonstrate prejudice or otherwise show harm resulting from the waiving party's conduct." (*Quach, supra*, 16 Cal.5th at p. 585, fn. omitted.)

Generally, we review the trial court's waiver finding for substantial evidence. (*Campbell v. Sunshine Behavioral Health, LLC* (2024) 105 Cal.App.5th 419, 428 (*Campbell*).) However, because the trial court did not have the benefit of the Supreme Court's decision in *Quach*, we will review de novo the undisputed record of the trial court proceedings and ask whether Incentax "'has established by clear and convincing evidence that [Gan] knew of [his] contractual right to compel arbitration and intentionally relinquished or abandoned that right.'" (*Campbell, supra*, 105 Cal.App.5th. at p. 428)

III.

Gan Waived Any Right to Arbitration

The waiving party's knowledge of his or her right to arbitration may be actual or constructive. (*Quach, supra*, 16 Cal.5th at p. 584.) Gan contends he did not discover the relevant arbitration agreements until September 2023. However, he does not dispute he was in possession of the documents containing the arbitration agreements in May 2022. He merely asserts he was unaware the documents contained arbitration agreements until September 2023. A review of the Admission Agreement belies the assertion. The arbitration provision is on the signature page, directly above the signature block. Even a layperson would have seen and understood it

10

was an arbitration provision. Gan had, at a minimum, constructive notice of an arbitration agreement in May 2022. We conclude it is "'highly probable'" Gan knew of his right to arbitration in May 2002. (*Id*., at p. 586.)

With respect to conduct demonstrating intentional abandonment of the right to arbitrate, the court in *Quach* found: "The record of Commerce Club's words and conduct also demonstrates by clear and convincing evidence its intentional abandonment of the right to arbitrate. . . . Rather than moving to compel arbitration at the outset of the case, Commerce Club answered the complaint and propounded discovery requests, suggesting it did not intend to seek arbitration. Although Commerce Club asserted in its answer that Quach should be compelled to arbitrate, its counsel did not otherwise raise the issue with Quach's counsel or with the court. Instead, it affirmatively indicated its preference for a jury trial and actively pursued discovery. On Commerce Club's initial case management conference statement, filed about three months after Quach filed his complaint, Commerce Club requested a jury trial, left the check box for indicating it was 'willing to participate' in arbitration blank, and represented that the only motion it intended to file was a 'dispositive motion.' After the case management conference, Commerce Club posted jury fees. In the following months, despite the disruptions caused by the COVID-19 pandemic, Commerce Club actively engaged in discovery, taking Quach's deposition for a full day and corresponding with Quach's counsel about discovery disputes. It was not until 13 months after Quach filed his complaint that Commerce Club first sought to enforce its right to compel arbitration. This evidence of Commerce Club's words and conduct shows that Commerce Club chose not to exercise its right to compel arbitration and to instead defend itself against Quach's claims in court." (*Quach, supra,* 16 Cal.5th at pp. 586-587.)

11

Similarly, here, Gan did not move to compel arbitration at the outset of the case, but answered the complaint and propounded discovery. He also requested a jury trial and posted jury fees. Although Gan did not take a deposition, he filed a cross-complaint and an amended cross-complaint. He also participated in court proceedings relating to a demurrer and a motion for a protective order. This record demonstrates by clear and convincing evidence that Gan intentionally abandoned his right to arbitration. Accordingly, we find Gan waived his right to arbitrate the claims in Incentax's complaint.

In determining Gan's conduct demonstrates waiver, we do not consider the 14-month delay between the assertion of arbitration as an affirmative defense in appellants' answer to Incentax's complaint and their motion to compel arbitration. Thus, we need not decide whether the "no waiver" provision, which states that "delay by any party hereto in enforcing or exercising any of the provisions of this Agreement . . . shall [not] . . . be deemed to be an implied waiver of any provision of this Agreement," applies to this case. A party's conduct may be inconsistent with an intent to arbitrate regardless of any delay, such as for example, timely requesting a remedy or invoking a procedure not available in arbitration.

Our waiver finding also resolves the question of whether GTG can invoke the arbitration provisions. As a nonsignatory to the arbitration agreements, GTG's right to compel arbitration is dependent on Gan's right to arbitration. Because Gan cannot arbitrate the dispute, there is no basis for GTG to request arbitration.

## III

### DISPOSITION

The order is affirmed. Incentax is entitled to its costs on appeal.


DELANEY, J.


WE CONCUR:


O'LEARY, P. J.


GOETHALS, J.