Filed 5/21/25  Widdess v. Jemico CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| JOHN WIDDESS,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>JEMICO, LLC,<br><br>        Defendant and Appellant. | A170413<br><br>(Alameda County<br>Super. Ct. No. 23CV036594) |

Jemico, LLC appeals from the trial court's order denying its motion to compel arbitration on the ground that it waived the right to enforce an arbitration agreement with its former employee, John Widdess.  Jemico urges, and Widdess agrees, we must evaluate de novo whether there was a waiver under *Quach v. California Commerce Club, Inc.* (2024) 16 Cal.5th 562 (*Quach*), which was decided after the trial court's ruling and abrogated the authority the court applied.  After our independent review under *Quach*, we conclude that Jemico waived its right to arbitrate.  Accordingly, we affirm.

## I.  BACKGROUND

Jemico does business as Renewal by Anderson of San Francisco, a window and door replacement provider.  Widdess worked for Jemico as a

1

"Design Consultant" or sales representative from July 2018 until December 2020. At the beginning of his employment, he executed an arbitration agreement, which Jemico placed in his personnel file soon after.

In June of 2023, Widdess filed this action against Jemico for whistleblower retaliation, wrongful termination in violation of public policy, and failure to pay wages. He alleged he was terminated for complaining about Jemico's practices related to sales commissions. On August 4, 2023, Jemico filed its answer generally denying Widdess's allegations and asserting several affirmative defenses. The answer did not mention an arbitration agreement. On the same day, Jemico served Widdess with two sets of form interrogatories, 42 requests for production of documents, and a deposition notice setting Widdess's deposition for the following month. Widdess served Jemico with discovery requests several days later.

During the afternoon of September 5, 2023, Jemico's counsel sent an email to Widdess's counsel "to request a mutual 30-day extension to the deadlines for discovery responses." This email did not mention any arbitration agreement. Widdess served responses to Jemico's discovery requests the next morning. Then counsel spoke on the phone. Widdess's counsel granted Jemico a 30-day extension to respond to Widdess's discovery requests and gave notice that he and his client were unavailable for the scheduled deposition and would provide new dates. According to Widdess's counsel, Jemico's counsel stated that Jemico "was considering enforcing an arbitration agreement between the parties" and asked if Widdess "want[ed] to stipulate to arbitrate." Counsel responded that he would ask his client, but his view was that Jemico waived the right to compel arbitration under the circumstances. Widdess's counsel memorialized this conversation in an email to Jemico's counsel later that day.

2

On October 5, 2023, Widdess's counsel confirmed that his client would not agree to arbitration. During a phone call the next day, he agreed to Jemico's request for a further extension of its discovery deadlines, and Jemico's counsel reminded him to provide dates when Widdess was available to appear for deposition. Widdess's counsel provided available dates on October 9, but Jemico did not re-notice Widdess's deposition.

On October 20, 2023, Jemico filed a case management statement. Jemico anticipated completing Widdess's deposition and written discovery in the case by February 2024, and first stated that it planned to file a motion to compel arbitration. Jemico requested a jury trial, and said the case would be ready for trial within the year. On October 31, after Widdess declined to grant any further extensions of its discovery deadlines, Jemico served responses consisting solely of objections. On November 6, the trial court continued the initial case management conference because Jemico "represent[ed] an intent to file a motion to compel arbitration" and ordered Jemico "to reserve a [motion to compel] on the same date" as the rescheduled case management conference, "forthwith."

Jemico filed its motion to compel arbitration on November 15, 2023. It relied principally upon *St. Agnes Medical Center v. PacifiCare of California* (2003) 31 Cal.4th 1187 (*St. Agnes*), which was abrogated by *Quach*, as the governing authority and argued that "prejudice from the litigation of the dispute is the critical factor in waiver determinations." According to Jemico, it had "not undermined the public policy rationale associated with arbitrations" or "impair[ed] [Widdess]'s ability to take advantage of the benefits of arbitration." So, Widdess could not demonstrate any prejudice and Jemico had not waived its right to arbitrate. Widdess opposed the motion solely on the ground that Jemico had waived its right to compel

3

arbitration. He argued that "a showing of prejudice . . . is no longer critical or required in arbitration waiver determinations because the United States Supreme Court abrogated the prejudice requirement" in *Morgan v. Sundance, Inc.* (2022) 596 U.S. 411 (*Morgan*). Moreover, Widdess claimed he suffered prejudice from Jemico's substantial participation in the litigation before asserting its right to arbitrate, and that other factors specified in *St. Agnes* supported a finding of waiver.

In support of its reply brief, Jemico's counsel filed a declaration stating that he "had not seen a copy of the Arbitration Agreement executed by" Widdess until sometime after he filed Jemico's answer on August 4, and "before [he] proposed the mutual 30-day stay in responding to discovery requests" on September 5. Counsel did not provide a reason for the delay or specify when he first saw an executed copy of the agreement. Nor did he indicate when he first learned Widdess had agreed to arbitration. Contrary to opposing counsel's contemporary account of the conversation, Jemico's counsel declared that on September 6 he told Widdess's counsel that Jemico's "intent was to seek arbitration."

Jemico also supported its reply with a declaration from its human resources director, who explained that Jemico's practice is "to place all documents signed by employees in their personnel file at the time the document is signed, or reasonably soon thereafter." She confirmed that Widdess's personnel file contained an executed copy of the arbitration agreement. The human resources director did not specify when Jemico retrieved the agreement from Widdess's personnel file after learning of his lawsuit, or when it notified its counsel of the agreement.

Following a hearing, the trial court applied the *St. Agnes* multifactor standard to find waiver and denied Jemico's motion. In its written order,

4

the court explained that Jemico's answer did not raise arbitration as a defense. It had propounded discovery, including form interrogatories "generally not available in arbitration," and informed Widdess of the arbitration agreement only after receiving his discovery responses. "Jemico thus obtained substantial benefit from California's liberal discovery mechanisms not generally available in arbitration." "At the same time," Jemico served "objections and did not serve substantive verified responses" to Widdess's discovery requests. Thus, the court found "Jemico acted inconsistently with the right to arbitrate" and its actions "prejudiced [Widdess]."

## II. DISCUSSION

### A. *Relevant Authorities and Standard of Review*

On petition of a party to an arbitration agreement, the trial court shall order a matter to arbitration if it "determines that an agreement to arbitrate the controversy exists, unless it determines that: [¶] (a) The right to compel arbitration has been waived by the petitioner." (Code Civ. Proc., § 1281.2.)

In analyzing whether a petitioner waived the right to compel arbitration, California courts previously applied *St. Agnes*, which set forth several factors germane to the analysis and held that among them, prejudice "is critical." (*St. Agnes, supra,* 31 Cal.4th at p. 1203.) In *Quach*, the California Supreme Court disapproved application of the *St. Agnes* factors "as a single multifactor test for determining whether the right to compel arbitration has been lost through litigation." (*Quach, supra,* 16 Cal.5th at p. 584.) Our high court explained that "[a]mong the factors we identified as relevant to a 'waiver' determination in *St. Agnes* are some that are relevant to other defenses, such as forfeiture, estoppel, laches or

5

timeliness, but not to waiver." (*Ibid.*) Going forward, courts must "be careful to consider only those factors that are relevant to the specific state law defense the party resisting arbitration has raised." (*Ibid.*)

When analyzing a waiver defense, *Quach* held that under generally applicable contract law, the party asserting waiver "must prove by clear and convincing evidence" that it is highly probable "the waiving party knew of the contractual right and intentionally relinquished or abandoned it." (*Quach, supra,* 16 Cal.5th at p. 584.) The waiving party's knowledge may be actual or constructive, and intent "may be proved by evidence of words expressing an intent to relinquish the right or of conduct that is so inconsistent with an intent to enforce the contractual right as to lead a reasonable fact finder to conclude that the party had abandoned it." (*Ibid.*) In an important departure from the *St. Agnes* analysis, "neither the effect of that conduct on the party" asserting waiver "nor that party's subjective evaluation of the waiving party's intent is relevant." (*Id.* at p. 585.) Thus, following the lead of the United States Supreme Court in *Morgan*, *Quach* held that "[t]o establish waiver, there is no requirement that the party" asserting waiver "demonstrate prejudice or otherwise show harm resulting from the waiving party's conduct." (*Ibid.*; see *Morgan, supra,* 596 U.S. at p. 419.)

Generally, we review a trial court's waiver finding for substantial evidence. (*Campbell v. Sunshine Behavioral Health, LLC* (2024) 105 Cal.App.5th 419, 428 (*Campbell*).) However, because the trial court did not have the benefit of the decision in *Quach* and instead applied *St. Agnes*, we will review the record de novo and ask whether Widdess " 'has established by clear and convincing evidence that [Jemico] knew of its contractual right

6

to compel arbitration and intentionally relinquished or abandoned that right.' " (*Campbell,* at p. 428.)

## B. *Analysis*

The first element of waiver is clearly present. Jemico had constructive, if not actual, knowledge of the arbitration agreement from the time of Widdess's employment, and at least from the time he filed this lawsuit. According to Jemico's human resources director, in accord with company policy, the agreement was sitting in Widdess's personnel file since he executed it in 2018. Nothing in the declarations supporting Jemico's motion suggests that Widdess's "personnel file or the arbitration agreement . . . had ever been missing or inaccessible" or "sheds light on the [three]-month delay between the beginning of this litigation and [Jemico]'s 'discovery' of the arbitration agreement." (*Campbell, supra*, 105 Cal.App.5th at p. 430.) The evidence reflects "either an intentional and willful decision to withhold the arbitration agreement, or a complete lack of diligence" in Jemico's examination of Widdess's personnel file. (*Ibid.*) We find it highly probable that Jemico knew of its right to seek arbitration, not after it filed its answer, but "from the outset of the case." (*Ibid.*)

Since there has been no express waiver, we must next consider whether Jemico's conduct in this litigation was "so inconsistent with an intent to enforce" the arbitration agreement "as to lead a reasonable fact finder to conclude that [Jemico] had abandoned" any such right. (*Quach, supra,* 16 Cal.5th at p. 584.) We conclude that it was. Instead of promptly asserting a right to arbitration, Jemico answered Widdess's complaint without mention of arbitration and served discovery, "suggesting it did not intend to seek arbitration." (*Id.* at p. 586.) Once it obtained an initial round of discovery responses from Widdess, Jemico continued to represent to

7

Widdess and the trial court that it would move forward with discovery apace. According to Widdess's counsel (and consistent with his contemporary e-mail), Jemico's counsel first raised the arbitration agreement by stating Jemico was merely "considering" enforcing it. This does not evince an actual change in strategy, especially because Jemico continued to act as if it would proceed with discovery. (See *Davis v. Shiekh Shoes, LLC* (2022) 84 Cal.App.5th 956, 968, fn. 7 (*Davis*) [" 'In [a party's] pre-trial huffery and puffery[,] [it] may float all sorts of intentions, serious or not.' "].)

After counsel's vague announcement, Jemico continued to request dates for Widdess's deposition and sought and obtained brief, routine extensions of its deadline to respond to Widdess's discovery. It was not until four months after the action was filed, on October 31, 2023, when Jemico apparently decided to stop participating in discovery and served its objection-only responses. Still, it was only after the trial court directed Jemico to file any motion to compel arbitration "forthwith" that it finally did so, nearly five months after Widdess filed his complaint and after engaging in litigation for most of that period. Beyond attributing a month of delay to waiting for final confirmation that Widdess would not agree to arbitrate, Jemico does not explain its delay in advising the court and counsel that an arbitration agreement applied and that it wished to enforce it. (See *Davis, supra,* 84 Cal.App.5th at p. 969 ["the absence of a reasonable explanation for delay is a significant factor weighing in favor of finding waiver"].)

" 'It is well established that a four- to six-month delay in enforcing the right to arbitrate may result in a finding of waiver if the party acted inconsistently with the intent to arbitrate during that window.' " (*Campbell, supra,* 105 Cal.App.5th at p. 432.) That was the case here. The

8

facts are similar to those in *Quach*, and evoke its concern with condoning "undue delay and gamesmanship" by employers who sit on their rights to compel arbitration. (*Quach, supra,* 16 Cal.5th at p. 586.) While the delay in *Quach* was longer, the employer similarly "indicated its intent to pursue a jury trial rather than arbitration, and actively engaged in discovery." (*Id.* at p. 587.)

*Guess?, Inc. v. Superior Court* (2000) 79 Cal.App.4th 553 also found waiver on similar facts, reversing the trial court. As the Court of Appeal summarized: "A defendant answered a complaint but did not allege a right to arbitrate as an affirmative defense, then participated in the discovery process without claiming a right to arbitrate. Three months later, the defendant moved to compel arbitration. The plaintiff cried foul, pointing out that the defendant had known about the arbitration provision at the time this case was filed and served." (*Id.* at p. 555.) The same summary applies here, as does the Court of Appeal's warning—entirely consistent with *Quach*—that "in litigation as in life, you can't have your cake and eat it too." (*Ibid.*)

*Armstrong v. Michaels Stores, Inc.* (9th Cir. 2023) 59 F.4th 1011, which Jemico relies on, is not to the contrary. *Armstrong* found no waiver where the defendant raised arbitration at the outset as a defense in its answer and "explicitly and repeatedly" notified the plaintiff and the district court that it would move to compel arbitration after obtaining limited initial discovery (ultimately, responses to "five interrogatories" and the production of "twenty-eight pages of documents"). (*Id.* at pp. 1013, 1015.) While the delay in *Armstrong* was longer than in this case, it was due to a removal to federal court and an impactful decision by the United States Supreme Court. (*Id.* at pp. 1013–1014.)

9

The facts are different here.  Jemico waived any right to compel arbitration under *Quach*.

### III.  DISPOSITION

The order denying Jemico's motion to compel arbitration is affirmed. Widdess is entitled to his costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(2).)

SIGGINS, J.*

WE CONCUR:

BROWN, P. J.
STREETER, J.

---

* Retired Presiding Justice of the Court of Appeal, First Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.